PER CURIAM.
This is a proceeding on a petition for a writ of certiorari brought by Miami Beach Kennel Club, Inc. to review an order of the Board of Business Regulation in which Tropical Park was given permission to hold its racing meet during the 1972-1973 winter thoroughbred racing season at Calder Race Course.
The initial question that must be determined by the court is respondents’ contention that petitioner is without sufficient standing to seek a judicial determination of the constitutionality of F.S. § 550.47, F.S.A. It is well established in Florida’s jurisprudence that only persons who can demonstrate that they will be affected by a legislative act have the proper standing to raise the question of the constitutionality of such legislation. Acme Moving and Storage Co. of Jacksonville v. Mason, Fla.1964, 167 So.2d 555; City of Cape Canaveral v. Chesnick, Fla.App. 1969, 227 So.2d 502. Based upon the decision in West Flagler Kennel Club v. Florida State Racing Commission, Fla.1963, 153 So.2d 5, we hold that petitioner does have the requisite interest in the act in question to challenge its constitutionality. In West Flagler Kennel Club five pari-mutuel racing establishments sought to enjoin the granting or transfer of a harness racing permit under a statute validating such permits. The court, in finding in the appellants the appropriate interest to litigate the validity of that statute, stated that: “To preclude this contest of the statute for lack of sufficient interest in the appellants or the Commission, as appellees urge, would constitute an inordinate and unjustified restriction on the litigation of such issues.”
Pursuant to FAR 4.1, 32 F.S.A., this cause is properly before the court on a petition for certiorari. See, City Council of North Miami Beach v. Trebor Const. Corp., Fla.App.1971, 254 So.2d 51; Biscayne Kennel Club, Inc. v. Board of Business Regulation, Fla.App.1970, 239 So.2d 53.
The decision of the Board is challenged by petitioner on the basis that the statute upon which the decision was based was unconstitutional. The subject legislation, Chapter 71-180, Laws of Florida, which created F.S. § 550.47, F.S.A., is as follows:
“An Act relating to the leasing of parimutuel facilities; permitting a lessee to operate at leased premises; adding section 550.47 Florida Statutes; providing an effective date.”
“Holders of valid pari-mutuel permits for the conduct of thoroughbred and standard-bred horse racing in this state shall be entitled to lease any and all of their facilities to any other holder of a valid pari-mutuel permit for thoroughbred or standard-bred horse racing, when located within a thirty-five (35) mile radius of each other; and such lessee shall be entitled to a permit and license to operate its race meeting at said leased premises.”
Petitioner contends that two separate and distinct features of F.S. § 550.47, F.S.A., are violative of the Constitution of Florida: (1) the title of the original act, Chapter 71-180, Laws of Florida, inadequately meets the requirements of Art. Ill § 6 of the Constitution of Florida- — 1968 Revision, F.S.A., and (2) the statute unconstitutionally discriminates between different parimutuel permit holders.
The first of the alleged unconstitutional aspects of F.S. § 550.47, F.S.A. concerns the title of the original act which petitioner urges is in violation of Art. Ill § 6 of the Florida Constitution, which provides in pertinent part:
“Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.”
*375 The thrust of petitioner's argument is that the title is deceptive and misleading since it does not put a reader on notice that only a restrictive and exclusive class of pari-mutuel permittees were granted certain rights to operate at leased premises.
We must weigh petitioner’s argument against the guidelines that have evolved for testing the sufficiency of titles against the standard in Art. Ill § 6. The principal purpose of this constitutional requirement is to avoid fraud or surprise that could spring from hidden provisions not indicated in the title by fully apprising the legislature and the public of the subject of the act. King Kole, Inc. v. Bryant, Fla.1965, 178 So.2d 2; State v. Florida State Turnpike Authority, Fla.1955, 80 So.2d 337. The legislature is allowed wide latitude in the enactment of laws and the courts will strike down the title of an act only where the title is plainly violative of the Constitution. Farabee v. Board of Trustees, Lee County Law Library, Fla.1971, 254 So.2d 1; Rouleau v. Avrach, Fla.1970, 233 So.2d 1; Wright v. Board of Public Instruction of Sumter County, Fla.1950, 48 So.2d 912. In fact, the majority of the cases stating this rule have declared that a presumption in favor of validity exists. Farabee v. Board of Trustees, Lee County Law Library, supra.
The title of an act is sufficient if it fairly gives such notice as will reasonably lead to inquiry into the body thereof. King Kole, Inc. v. Bryant, supra; Bird Key Corp. v. City of Sarasota, Fla.1951, 54 So.2d 245; McCord v. Smith, Fla.1949, 43 So.2d 704. However, this does not require that the title of an act be an index to the contents of the act by detailing everything in it, but it does require that the matter embraced within the act be fairly and naturally germane to the subject described in the title. See, dissenting opinion in Davis v. Smith, Fla.App.1969, 227 So.2d 342, adopted by Smith v. Davis, Fla.1970, 231 So.2d 517; Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843 (1945).
Returning to the subject statute, we find that the title was sufficiently within the above stated guidelines and, therefore, petitioner’s first theory on the statute’s unconstitutionality is without merit.
The second argument advanced by petitioner challenges the constitutionality of F.S. § 550.47, F.S.A., on the basis that the statute discriminates against the vast majority of the pari-mutuel permittees in Florida and confers the benefit of the statute only on the four winter thoroughbred horse racing permittees in Dade and Broward Counties. Petitioner claims that all holders of pari-mutuel permits, which would necessarily include summer and winter throughbred permittees, dog racing per-mittees, harness racing permittees and jai alai frontons, belong in one large class and as members of such a class they all must, by law, be treated equally in all respects. Historically and traditionally, however, these permittees have been treated differently by the legislature.
The legislature has passed numerous laws which make distinctions between the various pari-mutuel permittees. When considering only throughbred race track permit-tees and dog track permittees, many differences are evident as a result of legislation. For example, competition between permit holders is a major distinction since thoroughbred permittees are expressly prohibited by law from competing with each other while dog racing permittees may compete. The number of days that the different racing facilities may operate in a year is another difference regulated by the legislature. Additional distinctions between horse and dog racers include the tax structure, daily operational cost allowances and purse structure, which the legislature has recognized due to basic differences in the volume of the handle, attendance, per *376 capita wagering at the different facilities. More differences can be seen between the two types of pari-mutuels in the cost of the racing facilities, size of the plant, length of track, etc. The number of differences will increase when one expands this consideration to include all other types of parimutuel permit holders.
The conclusion that must be reached following the above discussion is that different classifications exist among the various pari-mutuel permittees. The many differences discussed above establish the valid foundation for these different classifications of pari-mutuel permit holders. It is to these reasonable classifications between the different types of permittees established by the legislature that the constitutional concepts of due process and equal protection must be applied. In order to prevent constitutional challenges for violation of due process and equal protection, all members of each separate class of permit holders must be treated equally.
' The statute under consideration only affects that classification of pari-mutuel per-mittees which include winter thoroughbred and standardbred horse racing permit holders. All those included in this class are treated equally and no violation of due process or equal protection has occurred. Petitioner cannot allege that the statute discriminates against dog tracks since the dog racing permittees belong to a separate and distinct classification not affected by this legislation.
The order of the Board of Business Regulation herein appealed is sustained.
Certiorari denied.