SMITH, Judge.
Again the task is to sort out a legislative purpose in conflicting statutes on the taxation and valuation of subsurface oil, gas, and mineral interests. The Supreme Court held earlier in this case[1] that Section 193.-481(1)[2] subjects “separated” oil, gas, and *414 mineral interests — those carved out of the fee — to county ad valorem real property taxation. Now: notwithstanding that Section 211.13[3] forbids any increased assessment of land because “there may be oil or gas under the surface” and declares that appraisal of oil and gas in place is “impossible under known valuation methods,” shall the assessor of a subsurface oil and gas leasehold take into consideration the value of the oil and gas which is the subject of the lease? The trial court said yes, and we agree. If the value of oil and gas yet to be captured can lawfully increase the appraisal of the subsurface leasehold held by a producer, as when the appraiser capitalizes a well’s anticipated income over its projected life, should the resulting ad valorem real property tax be considered as paid or reduced by the Section 211.02[4] excise taxes remitted by the same producer on the value of oil and gas produced each year? The trial court said no, and again we agree.
On a record essentially without factual dispute, the circuit court decided the stated questions adversely to Sun Oil and Chevron and in favor of appellees, the property appraiser of Santa Rosa County, the Department of Revenue, and the Board of Tax Adjustment. Sun Oil and Chevron appeal from a final summary judgment denying their prayer for a reduction in their Section 193.481(1) ad valorem real property assessments or for an offsetting credit in the amount of their Section 211.02 excise taxes paid.
The Santa Rosa County property appraiser has attributed substantial value to oil and gas leaseholds, for ad valorem real property tax purposes, by reason of the value of oil and gas in production and to be produced from those leaseholds. In 1977 the appraiser assessed nonproducing subsurface oil, gas, and mineral interests at a rate of $8 per acre, but assessed producing leaseholds and other subsurface interests at a rate of $20,659 or $37,552 per acre, depending on location. In so assessing producing leaseholds, the appraiser considered their market value, as evidenced by public records of sales, the location of producing wells, their effect on surface use, their accessibility, the allowable daily production established by law, costs of production including taxes, anticipated well rework costs necessitated by sulphur in the product, the diminishing value of each lease, and its capitalized income. If the appraiser complies with Section 193.011, prescribing generally the factors to be considered in deriving just valuations of all property,[5] the ap *415 praiser could not do otherwise than regard a producing leasehold as substantially more valuable than one whose productivity is yet undemonstrated. Any leasehold appraisal necessarily involves some estimate of the capital value of the asset which either yields or does not yield a valuable product on a continuing basis. See Escambia Chemical Corp. v. Fisher, 277 So.2d 307 (Fla. 1st DCA 1973).
The present difficulty is that by Section 211.02, the legislature levied an excise tax on oil and gas producers which is determined by the same production that now influences the ad valorem valuation; and that, first levying that excise tax in 1945, the legislature admonished property appraisers in Section 211.13 that, “when assessing the value of any land for ad valo-rem taxes,” they
shall not increase the value thereof by reason of the fact that there may be oil or gas under the surface of such land, in as much as it is impossible under known valuation methods to accurately ascertain the true value of oil and gas in place and taxation thereof is more certainly accomplished after its capture or severance from the earth or water. .
Section 211.02(2) recites that the excise tax was enacted “to compensate the county in which oil and gas is produced for the loss of ad valorem taxes by reason of” Section 211.13.
The enactment of Section 193.481 in 1963, subjecting subsurface leasehold interests to ad valorem real property taxation, necessarily implied that such interests should be appraised as buyers and sellers appraise them, and effectively repealed the inconsistent recitals in Section 211.02 and 211.13. See Cassady v. Consolidated Naval Stores Co., 119 So.2d 35 (Fla.1960), so construing former Section 193.221, Florida Statutes (1959). The excise tax levied by Section 211.02 remains in effect, undiminished by the legislature’s dissolution of its original scheme.
A producer owning a producing leasehold is not entitled to an abatement of one tax or the other, or to a pro tanto payment of one tax with his remittances of the other. Small v. Sun Oil Co., 222 So.2d 196 (Fla.1969), attempted such an accommodation after striking down, as violating constitutional[6] requirements of uniform rates of taxation of all property justly valued, Section 211.13’s former exemption from personal property taxes of “producing oil or gas equipment or machinery” used in operating a producing well. In an effort to achieve a result consonant with the original legislative purpose of the excise tax, the court required that excise taxes paid under Section 211.02 be applied against the ad valorem personal property tax resulting from the decision. Then the legislature deleted the constitutionally offensive exemption, and with its deletion the court-fashioned consolidation of taxes disappeared. Chapter 72-360, Section 19, Laws of Florida; Louisiana Land & Exploration Co. v. Gibbs, 354 So.2d 393 (Fla. 1st DCA 1978). If there were doubt of the repealing effect of Section 193.481 when Small was decided, the legislature removed that doubt by repealing the language on which the Small dispensation depended.
We are not prepared to enact the massive consolidation of excise and ad valorem real property taxes which would be required to preserve the fiction that the legislature both intends to tax subsurface real property interests, with due weight given to the income they produce, Sections 193.011, .481, and yet supposes that “it is impossible” to evaluate the oil or gas which is the only thing of value possessed in the leasehold. The legislature now regards such a lease *416 hold as property and, having done so, subjects it to valuation on an equal, uniform, and nonpreferential basis, even as other property. We further agree with the distinguished trial judge who held:
Had the Legislature intended to eliminate the excise tax, it would have done so by positive action, rather than relying upon a future strained judicial interpretation of the statutes to accomplish that result. . . . Legislative history of Chapter 211 and Chapter 193 and judicial interpretations thereof reflect that there is no legislative intent to terminate the excise tax nor is there a legislative intent by which this court can validly determine a setoff or credit. Any setoff or credit has the effect of a tax exemption and as such is unconstitutional since such exemption is not within the provisions of our present Constitution. See Archer v. Marshall, 355 So.2d 781 (Fla.1978).
We need not speculate in this case whether the legislature has similarly acted to subject “unseparated” oil and gas interests of the fee owner, who also produces, to both the excise tax and the ad valorem real property tax levied on the just value of both surface and subsurface rights within the fee. See Section 193.481(2), (3), Florida Statutes (1977); Cassady v. Consolidated Naval Stores Co., 119 So.2d 35 (Fla.1960). That question may and should be reserved for a case presenting it.
The judgment of the circuit court is AFFIRMED.
MILLS, Acting C. J., and ERVIN, J., concur.

. Straughn v. Sun Oil Co. (Del.), 345 So.2d 1062 (Fla.1977). See also Williams v. Jones, 326 So.2d 425 (Fla. 1975).

. Section 193.481(1), Florida Statutes (1977):
(1) Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the *414 fee or other interest in the fee. Such mineral, oil, gas, and other subsurface rights, when separated from the fee or other interest in the fee, shall be subject to separate taxation. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights.

.Section 211.13, Florida Statutes (1977), provides in part:
. The several property appraisers of this state and tax assessors of the cities therein, when assessing the value of any land for ad valorem taxes, shall not increase the value thereof by reason of the fact that there may be oil or gas under the surface of such land, inasmuch as it is impossible under known valuation methods to accurately ascertain the true value of oil and gas in place and taxation thereof is more certainly accomplished after its capture or severance from the earth or water. The value of land for ad valorem tax purposes shall not be increased by reason of the location thereon of any producing oil or gas equipment or machinery used in and around any oil or gas well and actually used in the operation thereof.

. Section 211.02, Florida Statutes (1977), provides in part:
(1) There is hereby levied, to be collected hereafter, as provided herein, an excise tax upon every person engaging or continuing within this state in the business of producing or severing oil or gas, as defined herein, from the soil or water for sale, transport, storage, or profit or for commercial use. The amount of such tax shall be measured by the value of the oil produced and saved, and by the value of the gas produced and sold, or used, and is hereby levied and assessed at the following rates

. Section 193.011, Florida Statutes (1977), requires that the property appraisers, in applying the constitutional standard of “just valuation,” take into consideration (1) the present cash value of the property; (2) the highest and best use to which the property can be expected to *415 be put in the immediate future, and the present use; (3) the location; (4) the quantity or size of the property; (5) the cost and replacement value of improvements; (6) the condition of the property; (7) the income from the property, and (8) the net proceeds of any sale of the property.

. Article IX, Section 1, Florida Constitution (1885); accord, Article VII, Sections 2 and 4, Florida Constitution (1968).