DAUKSCH, Chief Judge.
This is an appeal from a final judgment of the trial court adjudging Section 3 of Chapter 80-88, Laws of Florida (1980) (hereinafter referred to as section 550.075, Florida Statutes)[1] constitutionally invalid. *1015 The plaintiffs below, appellees Sanford-Orlando and Daytona Beach Kennel Clubs, sought declaratory relief in their complaint against appellant Seminole Park, attacking the constitutional validity of section 550.075 on ten grounds. In a carefully explained opinion the trial judge held section 550.075 unconstitutional and permanently enjoined Seminole Park from further operation of dograce meetings pursuant to the invalid statute.[2]
The trial court found that: 1) section 550.075 is either a general law of local application or a special law enacted in the guise of a general law; 2) as a special law enacted in the guise of a general law the act is invalid because it fails to meet the requirements of Article III, Section 10, Florida Constitution;[3] 3) as a general law of local application the act is invalid because the purported classification of tracks therein is arbitrary, and in reality a descriptive technique used to identify Seminole to the exclusion of other potential permittees; 4) as either a special law enacted in the guise of a general law, or a general law of local application, it is invalid as violating Article III, Section 11(a), (12) and (20)[4] because it grants a privilege to Seminole, a private corporation, and purports to regulate an occupation already regulated by an agency and board operating under the Department of Business Regulation; and 5) the provisions of section 550.075(3), purporting to require issuance of an annual license in perpetuity and for a particular portion of each year is invalid as a denial of equal protection and due process of law.
When an appellate court has occasion to pass upon the validity of a statute after a trial court has found it to be unconstitutional, the statute is favored with a presumption of constitutionality. In re Estate of Caldwell, 247 So.2d 1 (Fla.1971). Legislative enactments are presumptively valid and, when reasonably possible, all doubts as to validity of a statute are to be resolved in favor of its constitutionality. State v. Cormier, 375 So.2d 852 (Fla.1979). If there is a reasonable interpretation that may be placed on the statute which would render it valid, a District Court of Appeal is bound to adopt such an interpretation. Perry v. City of Ft. Lauderdale, 387 So.2d 518 (Fla. 4th DCA 1980).
It appears that section 550.075 was enacted solely to enable Seminole to convert their harness racing permit to dogracing and to allow Seminole to conduct summer dograce meetings, a feat that could not be accomplished under existing law. Although enacted as a general law, we find section 550.075 to be in reality a special law or general law of local application and thus constitutionally invalid for failing to comply with Article III, Section 10 and Section 11, Florida Constitution.
I
 A statute relating to subdivisions of the state or to subjects, persons or things *1016 of a class, based upon proper distinctions and differences that inhere in or are peculiar or appropriate to the class, is a general law. Carter v. Norman, 38 So.2d 30 (Fla.1948). General laws operate uniformly, not because they operate upon every person in the state, but because every person brought within the circumstances provided for is affected by the law. Laws are general and uniform in their operation upon all persons in like situation, and the fact of their being general and uniform is not affected by the number of persons within the scope of operation. Cesary v. Second National Bank of North Miami, 369 So.2d 917, 920 (Fla.1979).
A special law is a statute relating to particular persons or things or other particular subjects of a class; a local law is a statute relating to particular subdivisions or portions of the state or to particular places of classified locality. Local laws, often termed general laws of local application, use classification schemes to restrict application to particular localities. On occasion, the legislature has attempted to enact general laws under the guise of being general laws but which were operative as special or local laws, as determined from obvious purpose or legal effect as gathered from language or context. State ex rel. Baldwin v. Coleman, 148 Fla. 155, 3 So.2d 802, 803 (Fla.1941).
Section 550.075 was not enacted as a special law since it was not designed to become effective upon approval of the electors in the area affected. Proceeding on the premise that section 550.075 is thus a general law of local application, the act may be a valid general law only if 1) the classification scheme has a reasonable basis in the subject regulated and is not so designed as to fit some particular county or subject, and 2) the subject of regulation is not one of the 21 subjects proscribed by Article III, Section 11.
II
The trial court examined the classification scheme in section 550.075 and concluded the scheme was designed to fit a particular subject, namely, Seminole:
The purported classification of permit holders to which Chapter 80-88 applies is contained in Section (a) 1 and 2, and is similar in many respects to classification schemes contained in statutes construed by our Florida Supreme Court in two cases under the 1885 Florida Constitution. Though decided only 14 months apart, different results obtained. In West Flagler Kennel Club Inc. v. Florida State Racing Commission, 153 So.2d 5 (Fla.1963), Chapter 61-1940, Laws of Florida, was declared invalid.[5] In Biscayne Kennel Club, Inc. v. Florida State Racing Commission, 165 So.2d 762 (Fla.1964) the validity of Chapter 63-130, Laws of Florida, was upheld.[6] This court is unable to *1017 discern any reason for the conflicting results. But, though Biscayne is later in point of time, it is the opinion of this trial court that the West Flagler case more nearly comports with the result which should obtain in this cause using the 1968 Constitution as the standard. See Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625 (Fla.1971) (discussion at page 629 concerning the Biscayne case).
The evidence in the case now before the court shows that when Chapter 80-88 was enacted there were only two holders of harness racing permits in Florida, Tourist Attractions, Inc., at Pompano Beach (hereinafter called “Pompano”) and Seminole (sometimes known as “Seminole Down”). Of the two only Seminole met the qualifications for conversion to a dog track because during the specified 10-year period it did not (1) have an average daily handle for any racing meet in excess of $125,000, and (2) yield gross revenue to the State in excess of $350,000 per year. The Pompano track could not qualify for at least another 10 years (based on official data through fiscal year ended June 30, 1979). Legislative staff analyses show that Section 3 of CS/HB 595, later enacted as Section 3 of Chapter 80-88, was intended to apply only to the “harness-to-dog permit conversion” in Seminole County and to Seminole Downs.
Appellants argue that section 550.075 is a general law operating uniformly since it is potentially applicable to every other harness track and does not prohibit harness tracks not yet in existence from converting to dogracing in the future. This contention can be dispensed with merely by reading section 550.075, since the statute clearly affects only Seminole, because: 1) only Seminole could qualify for the initial license to be issued for the 1980-81 season, and 2) that license is the only one capable of being renewed each season thereafter. The ten year requirement “immediately preceding application” mandates that any permit holder seeking conversion have a ten year history of revenue below the stated maximum. Appellees convincingly argue that the legislature probably did not intend for “instant conversion” whereby an entity requests a harness permit, the voters ratify that harness permit, and then shortly thereafter the entity “converts” (under section 550.075) the voter approved harness permit into a non-voter approved dog racing permit.[7]
Ill
As either a special law or general law of local application, section 550.075 is invalid as violating Article III, section ll(a)(12) because it grants a privilege to a private corporation, Seminole. There was sufficient evidence that the only intent and purpose in enacting section 550.075 was to allow Seminole to convert from harness racing to dog racing.
Section 550.075 is also invalid as a special law or general law of local application because it violates Article III, section ll(a)(20). Quoting from the Final Judgment of the trial court:
That Section 3 usurps the authority and duties of state agencies charged with regulating pari-mutuel wagering is demonstrated by comparing its provisions with those of other statutes. Section 3 mandates that the Division of Pari-mutuel Wagering issue a dog racing permit merely for the asking.[8] This is contrary *1018 to the regulatory scheme applicable to all others seeking racing permits. Section 550.02, Florida Statutes, requires such applicants fulfill and meet all requirements, conditions and qualifications to Chapter 550, Florida Statutes, as well as all rules and regulations (of uniform application and effect) adopted by the Division of Pari-mutuel Wagering.
The application process for a permit to conduct racing is as follows: Under section 550.02, Florida Statutes, the Division of Pari-mutuel Wagering is charged with issuing permits to conduct racing and to regulate all aspects of such racing. Section 550.02(6) authorizes the Division to grant the permit if the' applicant duly fulfills and meets all requirements, conditions and qualifications set forth in Chapter 550 and the rules and regulations of the Division. Section 550.05 gives the procedure for application for a permit; a permit is not effective to authorize racing until ratified by a majority of the electors pursuant to section 550.06. Once the permit is granted and ratified, the Division shall grant to the per-mittee a license to conduct racing, under section 550.07 which further requires that “all subsequent annual applications for a license by said ratified permit holder shall be accompanied by proof . . . that the ratified permit holder still possesses all the qualifications prescribed by this chapter . . . . ” Thus, the ratified permit holder must reapply annually for a license to conduct racing for that year.
Section 550.075 issues a license and dog-racing permit (via the conversion) to the applicant, with such permit not being subject to the regulatory procedure for all other permit applications. The ratified harness racing permit holder can switch to dogracing without meeting the requirements of section 550.02, section 550.05 and section 550.06.
The trial court also found that section 3 of the Act mandates that the Division annually issue to Seminole a license to conduct dogracing during the season beginning May 3, ending September 1, which in effect abrogates the Florida Pari-Mutuel Commission’s authority under section 20.16(4) and section 550.011(1).[9] The Commission consists of four members appointed by the governor; it is within the Department of Business Regulation but it is not one of the five Divisions. The Division of Pari-Mutuel Wagering is charged with licensing, permitting, etc. under section 550.02; setting racing dates are not within the Division’s authority except to the extent allowed under section 20.16(5), whereby the Director of the Division has the authority only to approve minor changes in racing dates after the Commission has awarded dates, so long as there is no objection from any other permit holder or other affected party. If there is an objection, any date change must be approved by the Commission.
Under both section 20.16(4) and section 550.011(1), the Commission “shall not dele *1019 gate this function to any subordinate officer or division of the Department of Business Regulation.”
IV
Section 550.075 amended section 550.-37(13), Florida Statutes (1979), which also provided for conversion of harness permits to dogracing permits. Under the prior statute, section 550.37(13), a racetrack owner could conduct dogracing after application if he met the requirements of subsection (a) and if the Department issued him a license for that year. The licenses were annually issued, provided that the threshold pool and revenue conditions of sub-sections (1) and (2) had been met at the time of the initial application. As amended,- however, the holder of a ratified permit can apply only in the 1980-1981 season for the conversion of the permit, and a license to conduct dograc-ing. Each year thereafter the holder of such a converted permit is entitled to have his license renewed. Under the prior statute, the permit was never converted; the regulatory body continued to exercise control by annually issuing a license to conduct dogracing. Since permits have to be ratified by the electorate, as required by law, section 550.075 provides a method for Seminole to permanently convert their horserac-ing permit to a dogracing permit without complying with the ratification requirement.
Section 550.075 conflicts with section 550.05(2) and section 550.06 which requires ratification by the electors before a permit is effectual to authorize a race. Section 550.075 is also in conflict with other existing laws. Section 550.05(2) provides that:
No permit shall be issued by the division nor voted upon in any county to conduct running horseraces, harness horseraces or dograces at a location within 100 miles of another location for which a permit has been issued and a racing plant located.."
And, section 550.04 provides that summer dog racetrack meetings shall not be held except in a certain geographical area, namely Flagler and Volusia Counties.[10]
Courts must, if possible, avoid such construction as will place a particular statute in conflict with other apparently effective statutes covering the same general field. But courts are also to avoid an interpretation which would produce unreasonable consequences. Wakulla County v. Davis, 395 So.2d 540 (Fla.1981).
Section 550.075 is unconstitutional as it is in effect a special or local law enacted in the guise of a general law and thus invalid for failure to comply with Article III, Section 10, Florida Constitution. The purpose of the constitutional restrictions in Article III, Section 10 was explained in Milner v. Hatton, 100 Fla. 210, 129 So. 593, 596 (Fla.1930):
... It therefore fails to comply with the requirements of either the Constitution or the Statute, one of the purposes of both of which was to draw certain safeguards around the passage of local and special legislation by which the people of the locality to be affected would be given fair notice of the intention to get such legislation adopted, and of the substance thereof, and that the legislative journals should affirmatively show that such fair notice had been given as to the particular bill.
As a special or local law, section 550.075 is also unconstitutional as violative of Article III, Section 11(a), (12) and (20) in granting a privilege to Seminole and in usurping the duties and authority of both the Division and Commission on Pari-mutuel Wagering.
We have agreed in all respects with the well-reasoned judgment of the trial court in the particulars discussed above. We have not discussed his ruling that the statute in its effect violates constitutional rights of due process and equal protection because *1020 we deem it unnecessary to consider those findings.
AFFIRMED.
ORFINGER and COBB, JJ., concur.

. Section 550.075, Florida Statutes (1980), reads:
Conversion of ratified harness racing permit to dogracing license:
(1)Any holder of a ratified permit to conduct harness racing under the laws of this state, which permit has not been revoked in a referendum election, is entitled to apply to the Division of Pari-mutuel Wagering of the Department of Business Regulation for a license to conduct dograce meetings at such track, in lieu of harness racing, for the same number of racing days each season to which dog racetracks in counties having more than one dogracing track are entitled by law, subject to all of the provisions of the law concerning pari-mutuel taxes paid by tracks conducting dogracing, provided the following conditions are met:
(a) The average daily pari-mutuel handle in any racing meet conducted by the harness track during the 10 years preceding application to the Division of Pari-mutuel Wagering, as herein provided, has not exceeded $125,-000.
(b) The gross revenue to the state for the operation of the harness track for the 10 years immediately preceding application to the Division of Pari-mutuel Wagering, as herein provided, does not exceed the sum of $350,000 per year.
(2) The Division of Pari-mutuel Wagering, upon application of the holder of a ratified permit which meets the requirements of subsection (1), shall convert the permit and shall issue to the holder of the permit a license to conduct dograce meetings as set forth in subsection (1), provided the conditions stated herein are met at the time of the application to conduct dogracing, any provision of any law or rule in conflict herewith or to the contrary notwithstanding.
(3) On and after June 11, 1980, and upon application of the holder of a ratified permit *1015 which meets the requirements of subsection (1), the Division of Pari-mutuel Wagering shall issue to the holder of such permit a license to conduct a dograce meeting, which shall end on September 1 during the 1980-1981 racing season; and each meeting thereafter, the division shall renew, as provided by law, such license for the period starting May 3 through and ending on September 1.

.Pursuant to section 550.075, Seminole had obtained a greyhound racing permit for the 1980-81 summer season. The Division of Parimutuel Wagering granted the summer racing dates of May 3, 1981 through September 1, 1981 to Seminole. Appellee Daytona Beach Kennel Club had previously been granted summer racing dates of May 8, 1981 through September 12, 1981.

. Article III, Section 10 of the Florida Constitution provides that:
No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.

. Article III, section 11(a) of the Florida Constitution requires that there be no special law or general law of local application pertaining to:
(12) private incorporation or grant of privilege to a private corporation;

(20) regulation of occupations which are regulated by a state agency; ....

. Chapter 61-1940 was drafted so that it applied only to Ponce de Leon Trotting Association, of St. Johns County. The law purported to validate all harness racing permits issued after January 1, 1964 under which racing had been conducted during the five-year period preceding enactment; under certain conditions the holders of such permits were permitted to conduct harness racing in Broward County. The court found the primary purpose of the act was to provide for harness racing in Broward County, that there was no reasonable relationship between the Act’s purpose and the criteria used for classification of permit holders described, and that the classification scheme was in reality a descriptive technique employed merely for identification of certain permit holders, thus making the Act arbitrary and unequal in the same sense as any law applicable only to specific persons or things.

. Chapter 63-130 allowed the holders of all dog, winter horse and harness racing permits with average daily pari-mutuel pools of less than $20,000 for each of two years immediately preceding application to conduct harness racing during the winter horse racing season in any county that had by referendum approved pari-mutuel pools at race tracks two or more times, but only in counties having one licensed horse track the average daily pari-mutuel pool of which was $400,000 or more for each of the same two years. Only the holder of the Monroe County dog racing permit could qualify and only Broward County qualified as the county to which the permit could be transferred. The court apparently considered the purpose of the law to be that of increasing state revenues (which could be expected to result from the transfer). It discounted the improbability of other race tracks ever falling into the statutory classification, and held that it was the prospec *1017 tive application to future conditions that renders a classification constitutional if otherwise reasonable. It affirmed dismissal of the action by the trial court on findings that some counties might reasonably expect to come within the class covered, and that the Act was a general law of uniform operation.

. Section 550.05, Florida Statutes, provides:
... no permit shall be effectual to authorize any race until ratified by a majority of the electors participating in said election, and in the county in which applicant proposes to conduct racing ....

. The application made for conversion of the “hamess-to-dog racing permit” is not to be confused with the application of the permit holder for annual license to conduct racing. Documents appearing as a part of Plaintiff’s Exhibit #14 include the August 22, 1980 letter *1018 of the attorney for Seminole Park and Fairgrounds, Inc. requesting that the Director of the Division of Pari-mutuel Wagering “cause the Division ... to convert the existing harness racing permit to a permit for conducting dog race meetings, and issue to Seminole .. . the appropriate license for that purpose.” The Director’s response of August 27, 1980 states that “... the Division hereby confirms and ratifies your conversion of Seminole ... to a permit used for greyhounds under applicable Florida Statutes .... ” No formal application or other record of proceedings concerning conversion have been found.

. Under section 20.16(4), the Commission only has the authority to:
(a) Hear and approve the dates and changes of dates for racing and the dates within which any track or fronton may be operated as prescribed by Chapters 550 and 551, and it shall not delegate said function to any subordinate officer or division of said department.

And under section 550.011(1), the Commission shall:
. .. hear and approve the dates for racing in any county where one or more horse tracks or one or more dog tracks are seeking to race and hold ratified permits upon which any track can operate in any county, apportioning such dates to the several tracks in such counties as provided by law .... The Commissioner shall not delegate this function to any subordinate officer or division of the Department of Business Regulation.

. Current geographical preemption is consistent with acknowledged legislative power to create, temporarily at least, monopoly franchises in area of dog and horseracing. Biscayne Kennel Club, Inc. v. Florida State Racing Commission, 165 So.2d 762 (Fla.1964).