434 So.2d 879 (1983)
DEPARTMENT OF LEGAL AFFAIRS, State of Florida, Seminole Park & Fairgrounds, Inc., and Seminole Greyhound Park, Inc., Appellants,
v.
SANFORD-ORLANDO KENNEL CLUB, INC., and Daytona Beach Kennel Club, Inc., Appellees.
No. 62012.
Supreme Court of Florida.
April 14, 1983.
Rehearing Denied August 4, 1983.
Jim Smith, Atty. Gen., and John J. Rimes, III and Mitchell D. Franks, Asst. Attys. Gen., for State of Fla. Dept. of Legal Affairs; and Thomas M. Ervin, Jr. and E.C. Deeno Kitchen of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Barry Richard of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, and David U. Strawn of Akerman, Senterfitt & Eidson, Orlando, for *880 Seminole Park & Fairgrounds, Inc. and Seminole Greyhound Park, Inc., Appellants.
Marvin E. Barkin and Anne Y. Swing of Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, and Mack N. Cleveland, Jr., of Cleveland & Bridges, Sanford, for Sanford-Orlando Kennel Club, Inc.; and J. Kermit Coble, Noah C. McKinnon and John R. Godbee, Jr. of Coble, McKinnon, Rothert, Barkin, Clayton, Vukelja & Godbee, Daytona Beach, for Daytona Beach Kennel Club, Inc., appellees.
Dubose Ausley, C. Graham Carothers and Steven J. Uhlfelder of Ausley, McMullen, McGehee, Carrothers & Proctor, Tallahassee, and Rivers Buford, Jr., Tallahassee, for Stanley and Phyllis Kupiszewski, amicus curiae.
PER CURIAM.
This cause is before us for review as mandated by article V, section 3(b)(1), Florida Constitution. The trial court declared section 3, chapter 80-88, Laws of Florida, constitutionally invalid. The Fifth District Court of Appeal affirmed. State, Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 411 So.2d 1012 (Fla. 5th DCA 1982). This law permitted harness racing tracks to be converted to dog racing, and the issue presented for our resolution is whether or not it is a valid general law. We hold that it is, and we reverse.
In 1976 the legislature enacted chapter 76-24, Laws of Florida, (section 550.37(13), Florida Statutes (1977)), permitting the conversion of any harness racing track to dog racing if that track fell into a certain category. That category was based on the amount of "handle" or income on an average daily basis over a period of years, and the amount of tax revenue generated for the state. A track was eligible to convert if its income and tax revenue had not exceeded the statutory ceiling. The thrust of the legislation was to allow conversion if the track was financially ailing and failing to generate substantial tax revenue. At the time only one track was converted.
In 1980, legislation was introduced (CS/HB 595 was enacted as chapter 80-88, Laws of Florida) to substantially amend the statute, broadening it for the specific purpose of allowing appellants, Seminole Park and Fairgrounds and Seminole Greyhound Park (Seminole), to convert from harness racing to dog racing and to hold races during the summer. At that time only two harness racing establishments existed. That bill was enacted and is now section 550.075, Florida Statutes (1981).[1] Shortly after its passage Seminole applied for and *881 received a converted permit and was assigned the racing dates set forth in the statute.
Seminole is located within forty miles of the tracks owned by appellees, Sanford-Orlando Kennel Club and Daytona Beach Kennel Club. These appellees brought suit seeking a declaratory judgment that section 3 of chapter 80-88, Laws of Florida, was unconstitutional and petitioned for an injunction to prohibit a dog race meeting within 100 miles of the facilities of the appellees pursuant to section 550.05, Florida Statutes (1979).[2] Seminole counterclaimed against Daytona Beach Kennel Club, Inc., challenging the constitutionality of chapter 24360, Laws of Florida (1947) and chapter 57-180, Laws of Florida, the laws authorizing Daytona Beach Kennel Club, Inc. to hold summer race meetings. The State of Florida intervened, asserting the constitutionality of all three laws.
The trial court adjudged section 3, chapter 80-88, unconstitutional, dismissed the counterclaim and granted the injunction. The state and Seminole appealed; the district court of appeal agreed with the trial court that this was not a general law, terming it a special law or general law of local application passed as a general law and that as such it violated article III, sections 10, 11(a), (12) and (20) of the Florida Constitution. We disagree.
This statute comes before this Court clothed with a presumption of constitutionality. In re Estate of Caldwell, 247 So.2d 1 (Fla. 1971). It is with that rule in mind that we scrutinize chapter 80-88 and we find that it is a valid general law.
It is well established that a general law does not lose its general law status so long as it operates uniformly upon subjects as they may exist in the state, applies uniformly within permissible classifications, operates universally throughout the state or so long as it relates to a state function or instrumentality. State ex rel. Landis v. Harris, 120 Fla. 555, 163 So. 237 (1934). Furthermore, we have held that a law pertaining to subdivisions of the state or to subjects, persons or things of a class is valid if the classification is based upon proper distinctions and differences that inhere in or are peculiar or appropriate to the class. Carter v. Norman, 38 So.2d 30 (Fla. 1948). The classification scheme must be reasonable and not arbitrary, Waybright v. Duval County, 142 Fla. 875, 196 So. 430 (1940), and must rest on some reasonable relation to the subject matter in respect of which the classification is proposed. State ex rel. Blalock v. Lee, 146 Fla. 385, 1 So.2d 193 (1941).
A general law operates uniformly, not because it operates upon every person in the state, but because every person brought under the law is affected by it in a uniform fashion. Uniformity of treatment within the class is not dependent upon the number of persons in the class. Cesary v. Second National Bank, 369 So.2d 917 (Fla. 1979).
The district court of appeal and the trial court examined section 550.075 and found that the classification scheme provided therein made this a special law or a general law of local application because the legislation was designed to allow Seminole to be converted to dog racing. More importantly, both courts found that this statute would not in fact permit any other track to be converted.
At the outset we should establish that the State of Florida has a legitimate pecuniary interest in racing because of the substantial revenue it receives from pari-mutuel betting. Furthermore, because of the nature of the enterprise, authorized gambling, this state may exercise greater control and use the police power in a more arbitrary manner. Hialeah Race Course, *882 Inc. v. Gulfstream Park Racing Association, 37 So.2d 692 (Fla. 1948), appeal dismissed, 336 U.S. 948, 69 S.Ct. 885, 93 L.Ed. 1104 (1949). Additionally, the legislature has historically and traditionally enacted valid general laws which make numerous distinctions among the classifications of the various pari-mutuel permittees. Miami Beach Kennel Club, Inc. v. Board of Business Regulation, 265 So.2d 373 (Fla. 3d DCA 1972). In light of this state interest  increased state revenues  the classification  less productive racing facilities  was certainly reasonably related to the subject matter. Indeed it was based solely on the past income and tax revenue yield of the tracks that would be allowed to convert. The state was making it possible for a financially ailing enterprise to convert to a more lucrative endeavor thus giving the state more tax revenues.
But the crux of the appellees' argument and the thrust of the two courts below is that this legislation was intended to benefit Seminole and did in fact apply only to Seminole. Thus, they contend, this legislation loses its general law classification.
It matters not at all that when the legislation was wending its way through the House and Senate that the members were aware that it would benefit Seminole. Appellees have cited several cases in support of the proposition that underlying legislative intent may invalidate legislation passed as a general law of local application. Walker v. Pendarvis, 132 So.2d 186 (Fla. 1961); State ex rel. Blalock v. Lee; Waybright v. Duval County. Careful reading of these cases, however, reveals that the acts therein were invalidated because this Court found no reasonable relationship between the classification and the subject matter of the act. The intent to create a special act without following the procedures required by the constitution was inferred from the lack of rational relationship. The Court did not go behind the face of the act until it was satisfied that no proper exercise of legislative power would support the law. "It is a well established rule of construction that the intent of the Legislature as gleaned from the statute is the law." Small v. Sun Oil Co., 222 So.2d 196, 201 (Fla. 1969), superseded by statute as stated in Sun Oil Co. v. Fisher, 370 So.2d 413 (Fla. 1st DCA 1979), cert. denied, 383 So.2d 1203, appeal dismissed, 383 So.2d 1203 (Fla. 1980) (emphasis in original). It is an equally well established rule of construction that courts will look to legislative history only to resolve ambiguity in the statute. State ex rel. Florida Jai Alai, Inc. v. State Racing Commission, 112 So.2d 825 (Fla. 1959); Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958). Compare McLellan v. State Farm Mutual Automobile Insurance Co., 366 So.2d 811 (Fla. 4th DCA 1979), disapproved on other grounds, South Carolina Insurance Co. v. Kokay, 398 So.2d 1355 (Fla. 1981) (legislator's affidavit as to what transpired during passage of bill not admissible to show legislative background). See generally 30 Fla.Jur. Statutes § 101 (1974). Where, as here, the resulting law is proper and unambiguous, we need look no further than the statute itself.
Neither does it matter that, once the law was passed, Seminole was the only track to benefit from it. The controlling point is that even though this class did in fact apply to only one track, it is open and has the potential of applying to other tracks. As we said in Biscayne Kennel Club, Inc. v. Florida State Racing Commission, 165 So.2d 762, 763 (Fla. 1964):
Because all of the classifications effected (sic) by this act are made on the basis of factors which are potentially applicable to others and which are not purely arbitrary in relation to the subject regulated or the conduct authorized, we conclude that the current effect of the law stipulated to by the parties is not controlling and it must be sustained as a general act of uniform operation.
(footnote omitted). The requirement of a ten-year history would not in and of itself preclude another track sometime in the future from converting. The fact that matters is that the classification is potentially open to other tracks. It is also significant to note that this statute amended an existing *883 one and in fact made the class broader than it had been, by increasing the ceiling of the daily earnings and the yearly revenue.
Appellees claim that the most offensive language is subsection (3), which made it possible for only Seminole to receive certain racing dates and only Seminole to have an automatic renewal. As appellant urges we see that language as simply transitional and the entire statute must be read in pari materia, Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation District, 274 So.2d 522 (Fla. 1973). Consequently, we find that this language can and should be applied to future tracks which convert, giving them the opportunity for annual license renewal also.
This state's interest in recreational racing and wagering is substantial. Not only does it enhance the tourist industry by providing entertainment and interest to our visitors, but the tax revenues have significantly aided our statewide programs. We find it very appropriate for the legislature to assist this industry as it would any other in like circumstances.
The decision of the district court is reversed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] 550.075 Conversion of ratified harness racing permit to dogracing license. 

(1) Any holder of a ratified permit to conduct harness racing under the laws of this state, which permit has not been revoked in a referendum election, is entitled to apply to the Division of Pari-mutuel Wagering of the Department of Business Regulation for a license to conduct dograce meetings at such track, in lieu of harness racing, for the same number of racing days each season to which dog racetracks in counties having more than one dogracing track are entitled by law, subject to all of the provisions of the law concerning pari-mutuel taxes paid by tracks conducting dogracing, provided the following conditions are met:
(a) The average daily pari-mutuel handle in any racing meet conducted by the harness track during the 10 years preceding application to the Division of Pari-mutuel Wagering, as herein provided, has not exceeded $125,000.
(b) The gross revenue to the state for the operation of the harness track for the 10 years immediately preceding application to the Division of Pari-mutuel Wagering, as herein provided, does not exceed the sum of $350,000 per year.
(2) The Division of Pari-mutuel Wagering, upon application of the holder of a ratified permit which meets the requirements of subsection (1), shall convert the permit and shall issue to the holder of the permit a license to conduct dograce meetings as set forth in subsection (1), provided the conditions stated herein are met at the time of the application to conduct dogracing, any provision of any law or rule in conflict herewith or to the contrary notwithstanding.
(3) On and after June 11, 1980, and upon application of the holder of a ratified permit which meets the requirements of subsection (1), the Division of Pari-mutuel Wagering shall issue to the holder such permit a license to conduct a dograce meeting which shall and on September 1 during the 1980-1981 racing season; and each meeting year thereafter, the division shall renew, as provided by law, such license for the period starting May 3 through and ending on September 1.
[2] Section 550.05(2), Fla. Stat. (1979) provides:

Upon all applications filed and approved a permit shall be issued to the applicant ... provided, however, ... no permit shall be issued by the division nor voted upon in any county to conduct . .. dograces at a location within 100 miles of another location for which a permit has been issued and a racing plant located, ... .