Mr. Gregory L. Coler Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32399-0700
Dear Secretary Coler:
You have asked my opinion on substantially the following questions:
 (1) Does a contract between a state agency and a state university for a named faculty member to perform the duties and responsibilities of a full-time established senior management position constitute an interchange agreement pursuant to s. 112.24, F.S., a contract for consultant other-personal-services as defined within Ch. 216, F.S., or some other classification?
 (2) Does the specific authorization for exchange agreements in s. 240.227(11), F.S., apply so that the duration of an employee interchange agreement would not be limited to two years and three months when a faculty member of a university is the subject of the employee interchange agreement?
 (3) If the answer to Question Two is that the contract is not within the auspices of s. 240.227(11), F.S., and that the limitation in duration applies, would an upgrade in the full-time senior management position and a new contract with perhaps imperceptible changes in actual duties and responsibilities commence a new interchange period?
In sum, I am of the opinion that:
 (1) A contract between the Department of Health and Rehabilitative Services for a named faculty member to perform the duties of a full-time established senior management position within the department would appear to constitute an employee interchange agreement provided for in, and subject to the terms of, s. 112.24, F.S. An employee interchange arrangement authorized by this statute, however, may only be temporary and may not exceed a period of two years and three months. Such a contract would not appear to qualify as a consultant other-personal-services contract as provided for in Ch. 216, F.S.
 (2) The provisions of s. 240.227(11), F.S., authorizing a university president to adopt rules for the exchange of persons in comparable positions are not applicable to a contract between the Department of Health and Rehabilitative Services for a university faculty member to perform the duties of a full-time established senior management position within the department.
 (3) An upgrade in the position performed by the faculty member or imperceptible changes in the actual duties performed would not alter the durational limitations placed on employee interchange programs pursuant to s. 112.24, F.S.
You state that the Department of Health and Rehabilitative Services (HRS) has contracted with the University of South Florida since 1981 for the services of Dr. William Ausbon to act as the Children's Medical Services (CMS) program director. The funding for this contract has been a recurring line item in the Other Personal Services category for the CMS budget entity. HRS makes monthly contractual payments to the university. Dr. Ausbon receives his salary from the university and all the fringe benefits of faculty employment with the State University System. His only responsibilities, however, are to perform those services provided for in the contract with HRS.
You further state that the intent of the parties to the contract, the university and HRS, is for this contractual arrangement to continue indefinitely. According to your letter, the department has entered into a similar contractual arrangement with another university.
This office is not authorized to comment upon the validity of an existing contract but rather must presume the validity of any such agreement. My comments, therefore, must be general in nature.
Question One
Section 112.24, F.S., in order "[t]o encourage economical and effective utilization of public employees in this state," authorizes the temporary assignment of employees among agencies of government, both state and local, under the terms and conditions set forth in the statute.[1] Pursuant to s. 112.24(1), F.S., the details of the employee interchange program shall be the subject of an agreement, which may be modified or extended, between the sending and receiving parties.
Section 112.24(3), F.S., as amended,[2] provides for the payment of salary, leave, travel and transportation, and reimbursements for an employee of a sending party that is participating in the interchange program. Such an employee may be considered "as on detail to regular work assignments of the sending party or in a leave status from the sending party, except that the receiving agency shall pay the salary and benefits of such employee during the time, in excess of 1 week, that the employee is working for the receiving agency."[3]
The provisions in s. 112.24, F.S., would appear to authorize a state agency to enter into an employee interchange agreement with a state university for the assignment of a named university faculty member to HRS to perform the duties of a full time established senior management position. Such an interchange assignment, however, would be subject to the terms and conditions set forth in the statute.
In setting forth the purpose of the statute, s. 112.24, F.S., clearly states that the section provides for the temporary assignment of employees among agencies of government. Moreover, subsection (2) of the statute expressly provides:
 The period of an individual's assignment or detail under an employee interchange program shall not exceed 2 years. Upon agreement of the sending party and the receiving party and under the same or modified terms, an assignment or detail of 2 years may be extended by 3 months. If the appointing agency is the Governor or the Governor and Cabinet, the period of an individual's assignment or detail under an employee interchange program shall not exceed 2 years plus an extension of 3 months or the number of years left in the term of office of the Governor, whichever is less.
The term of the contracts you have submitted for this office's review are for one year. However, it appears that HRS and the university have entered into a series of contracts whereby the faculty member has been performing the duties and responsibilities of this position since 1981 and you state that it is the intent of the parties to the contract "that this contractual arrangement will continue indefinitely."
In light of the clear expression of legislative intent as evidenced by the plain language of the statute,[4] I am of the opinion that HRS may not enter into an employee interchange arrangement pursuant to s. 112.24, F.S., with a state university for the indefinite assignment of university personnel to HRS. Thus, HRS is not, in my opinion, authorized to enter into a contract, or series of contracts, which provide for the interchange assignment of a university faculty member to perform the duties of a full-time position in HRS for a period which exceeds two years and three months.
You also ask whether such an agreement is a contract for consultant other-personal-services as defined in Ch. 216, F.S., or some other classification.
Section 216.011(1)(x), F.S., defines "Other personal services" to mean
 the compensation for services rendered by a person who is not a regular or full-time employee filling an established position. This definition includes, but is not limited to, services of temporary employees . . . and consultants and other services specifically budgeted by each agency in this category.
 1. In distinguishing between payments to be made from salaries appropriations and other-personal-services appropriations, those persons filling established positions shall be paid from salaries appropriations and those persons performing services for a state agency, but who are not filling established positions, shall be paid from other-personal-services appropriations.
 2. It is further intended that those persons paid from salaries appropriations shall be state officers or employees and shall be eligible for membership in a state retirement system and those paid from other-personal-services appropriations shall not be eligible for such membership. (e.s.)
Under the terms of the contract, the position to be filled by the faculty member is a full-time established senior management position within HRS. Based upon the above quoted language, it appears that inasmuch as the faculty member is filling an established position, payments should be made from salary appropriations and not from other-personal-services appropriations.
Accordingly, in the absence of legislative or judicial authority to the contrary, I am of the opinion that a contract between HRS and a state university for a named faculty member to perform the duties of a full-time established management position would not constitute a consultant other-personal-services contract within the meaning of Ch. 216, F.S.[5]
I am not aware of, nor have you drawn my attention to, any other provision (other than s. 112.24, F.S.) which would authorize HRS to enter into such a contractual arrangement. As this office has previously recognized, administrative agencies, such as HRS, possess only such authority as has been expressly granted or may be necessarily implied therefrom.[6]
Question Two
Section 240.227(11), F.S., provides that each university president shall:
 Make rules necessary for the establishment and maintenance of a personnel exchange program, by which persons employed within the university as instructional and research faculty and comparable administrative and professional staff may be exchanged with persons employed in like capacities by institutions of higher learning which are not under the jurisdiction of the university, by units of government either within or without this state, or by private industry. . . . The duties and responsibilities of a person participating in the exchange program shall be the same as those of the person he replaces.[7] (e.s.)
You inquire whether the above provision would remove the time limitation contained in s. 112.24(2), F.S., when the employee participating in the employee interchange program pursuant to s.112.24, F.S., is a person employed by a university.
The provisions of s. 240.227(11), F.S., are not, in my opinion, applicable to your inquiry. As quoted above, s. 240.227(11), F.S., provides for the exchange of persons employed in comparable capacities with the duties and responsibilities of a person participating in the exchange program being the same of the person he replaces.[8] From the information provided to this office, it does not appear that the contract between HRS and the university involves an exchange of personnel but rather a transfer of university personnel to HRS without an accompanying transfer of HRS personnel to the university. Nor can I conclude from the information provided to this office that the position of a university faculty member and the Children's Medical Services program director are comparable positions.[9]
Accordingly, I am of the opinion that s. 240.227(11), F.S., does not remove the time limitation contained in s. 112.24, F.S., under the circumstances set forth in your inquiry.
Question Three
As previously discussed, s. 112.24, F.S., in authorizing the interchange of employees among government agencies, contemplates that such interchange will be temporary. Efforts to frustrate or circumvent such legislative intent should not be permitted.[10]
Moreover, the statute itself in providing for the employee interchange program, states that the details of the program shall be the subject of an agreement which may be altered.[11] The period of an individual's assignment or detail under the program, however, may not exceed 2 years, although it may, under the same or modified terms, be extended an additional three months.
An upgrade in position and/or "imperceptible changes in actual duties and responsibilities" would not, in my opinion, alter the time limitations specified in s. 112.24, F.S. To conclude otherwise would destroy the intent of the Legislature clearly expressed in the statute that such assignments are temporary. Accordingly, your third question is answered in the negative.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] The statute requires that the duties and responsibilities of the interchange employees shall be limited to the mission and goals of the agencies of government.
[2] Section 2, Ch. 88-557, Laws of Florida.
[3] Section 112.24(3)(a). If on detail, the employee shall receive the same salary and benefits as if he were not on detail and shall remain the employee of the sending party except that supervision during this period may be governed by the interchange agreement. If on leave, the employee has the same rights, benefits and obligations as other employees in a leave status, subject to certain exceptions. And see, s. 112.24(4)(c), F.S.
[4] See generally, Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983) (intent of the Legislature as gleaned from statute is the law); St. Petersburg Bank Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982) (while legislative intent controls construction of statutes, that intent is determined primarily from the language of the statute).
[5] In light of the responsibilities of the Comptroller as preauditor of all state expenditures and to ensure that expenditures are authorized by law, otherwise proper and legal, and for a valid public purpose, HRS may wish to contact the Comptroller on this issue. See, s. 4, Art. IV, State Const., and Florida Development Commission v. Dickinson, 229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970), discussing the Comptroller's duties.
[6] See, e.g., AGO's 86-46 and 85-65. And see, Lee v. Division of Florida Land Sales and Condominiums, 474 So.2d 282 (5 D.C.A. Fla., 1985) (an administrative agency has only such power as expressly or by necessary implication is granted by legislative enactment; it may not increase its own jurisdiction and, as a creature of statute, has no common law jurisdiction or inherent power); Grove Isle, Ltd. v. State Department of Environmental Regulation,454 So.2d 571 (1 D.C.A. Fla., 1984).
[7] The statute provides that the salary and benefits of the State University System and state personnel participating in the exchange program shall be continued during the period of time they participate in the exchange program. No such personnel shall be deemed to have a break in creditable or continuous state service of employment during this period.
[8] See, Webster's Third New International Dictionary 792 (unabridged 1981) (defining "exchange" as the act of giving or taking one thing in return for another as if equivalent; trade; reciprocal transfer); Black's Law Dictionary 671 (4th rev. ed. 1968) (defining "exchange" as to swap; to part with, give or transfer of an equivalent).
[9] See, Webster's Third International Dictionary 461 (unabridged 1981) (defining "comparable" as having enough like characteristics or qualities to make a comparison appropriate; equivalent, similar).
[10] See, Thayer v. State, 335 So.2d 815 (Fla. 1976) (statute is to be construed in such a way as to achieve the legislative intent); Barruzza v. Suddath Van Lines, Inc., 474 So.2d 861 (1 D.C.A. Fla., 1985).
[11] See, s. 112.24(1) and (2), F.S., respectively providing that the details of an employee interchange agreement "may be extended or modified" and that "[u]pon agreement of the sending party and the receiving party and under the same or modified terms, an assignment or detail of 2 years may be extended by 3 months."