369 So.2d 917 (1979)
Ann M. CESARY, Appellant,
v.
The SECOND NATIONAL BANK OF NORTH MIAMI, Appellee.
No. 53497.
Supreme Court of Florida.
February 1, 1979.
Rehearing Denied May 14, 1979.
Shalle Stephen Fine, Steven R. Brownstein, Miami, and Milton Feller, Miami Beach, Fine & Brownstein, Miami, and Marion E. Sibley of Sibley, Giblin, Levenson & Glaser, Miami Beach, for appellant.
*918 Sheldon Rosenberg of Ress, Gomez, Rosenberg, Berke & Howland, North Miami, and Jerry B. Crockett and Joseph P. Klock, Jr., of Steel, Hector & Davis, Miami, for appellee.
Jim Smith, Atty. Gen., and Susan E. Mole, Asst. Atty. Gen., Tallahassee, for State of Fla., amicus curiae.
Donald T. Senterfitt and J. Thomas Cardwell of Akerman, Senterfitt & Eidson, Orlando, for Florida Bankers Ass'n, amicus curiae.
Kenneth C. Howell of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for The Florida Consumer Finance Ass'n, amicus curiae.
ALDERMAN, Justice.
This cause is before us for consideration of the following questions certified to us by the United States Court of Appeals for the Fifth Circuit pursuant to rule 4.61, Florida Appellate Rules:
1. Does Section 656.17(1), which sets the allowable interest rate for Morris Plan banks and industrial savings banks, violate Article III, Section 11(a)(9), Florida Constitution?
2. Do the special provisions of existing statutory law referred to in Section 687.031, which creates statutory exceptions to the general law of Florida governing interest and usury, violate Article III, Section 11(a)(9), as being special laws fixing interest rates on private contracts?
We answer both questions negatively and hold that neither section 656.17(1)[1] nor section 687.031,[2] Florida Statutes (1975), violates article III, Section 11(a)(9), Florida Constitution.
Ann Cesary brought a suit against The Second National Bank of North Miami in her own behalf and on behalf of those individuals who have borrowed less than $500,000 from the Bank who have paid interest thereon within a period of two years last past the date of filing this action where interest has been charged in excess of ten percent per annum. Cesary borrowed $8,800.44 from the Bank, evidenced by a promissory note dated March 29, 1972, which on its face provides for an interest rate of eleven percent per annum. Under the provisions of 12 U.S.C. § 85 (1945), the Bank was entitled to receive interest at the maximum rate allowed by Florida law. Cesary contended that under the Florida usury statute, the note was usurious on its face. The Bank defended the action on the basis of section 687.031, Florida Statutes, *919 which allows the charging of interest in excess of ten percent for loans arising under one or more statutory exceptions outlined elsewhere in the Florida Statutes. The Bank argued that its loan fits into the exception provided in section 656.17(1) for industrial savings banks and Morris Plan banks, and that since the exception permits a 14.3 annual percentage rate, the eleven percent rate charged Cesary was not usurious. Cesary did not contest that the loans fall into the exception created by sections 656.17(1) and 687.031. Rather, she contended that these two statutory provisions are special laws prohibited by article III, section 11(a)(9), Florida Constitution, which provides:
(a) There shall be no special law or general law of local application pertaining to:
.....
(9) creation, enforcement, extension or impairment of liens based on private contracts, or fixing of interest rates on private contracts... .
Holding these two statutes constitutional, the United States District Court for the Southern District of Florida entered summary judgment for the Bank. That court said:
The statutory exceptions to the Florida interest and usury law noted in Florida Statute § 687.031 are not special laws in the prohibited constitutional sense in that they have uniform operation throughout the State of Florida. A special law is one designed to operate on particular persons or things or one that operates upon classified persons or things, when classification is not permissible or the classification adopted is illegal. A general law is one relating to subjects or persons based upon proper distinctions and differences that adhere in or are peculiar or appropriate to such subject or persons. Laws based upon proper classifications may be general laws even though limited to a part of the people. Wide discretion is granted to the legislature in resorting to classification. The burden of showing that the classification provided for does not rest upon any reasonable basis, but is essentially arbitrary, is the burden of the party attacking the classification in the statute. Anderson v. Board of Public Instruction, [102 Fla. 695,] 136 So. 334, State ex rel. Landis v. Harris, [120 Fla. 555,] 163 So. 237. Uniformity of operation of a statute as required by the Florida Constitution does not require universality of operation, Lykes Bros. v. Bigby, 155 Fla. 580, [21 So.2d 37,] but rather reasonable classification as to subject matter. Cates v. Heffernan, [154 Fla. 422,] 18 So.2d 11.
This Court is not able on the basis of its judicial knowledge to determine that the grounds justifying the particular classifications and distinctions created by the Florida legislature for the exceptions to the general law governing interest and usury are unreasonable, and there is no substantial basis for holding Florida Statute 687.031 and the exceptions noted therein unconstitutional.
No. 75-654 (S.D.Fla. Order Determining Constitutionality, Oct. 22, 1975).
Cesary appealed to the United States Circuit Court, Fifth Circuit, which in turn has certified to us the questions regarding the constitutionality of these statutes.
Cesary argues that the exceptions to the Florida usury statute are special laws in violation of article III, section 11(a)(9), because they benefit special groups, the lenders who operate under the exception, and that, therefore, the loan obtained by her from the Bank was usurious. She states that the purpose of the usury law is to protect the borrower from unconscionable lenders and the validity of the classification created by the challenged statutes should be tested in light of this purpose. Analyzing the amount of interest which may be charged by various lenders including small loan companies, credit unions, industrial savings, and savings associations under the general statutory scheme, she submits that the amount of interest permitted to be charged for the same amount of loan depends upon who the lender is and not upon the character of the borrower, the amount of loan, or security pledged. She contends *920 that this statutory scheme has as its purpose the benefit of certain lenders and not the protection of the borrower and that these exceptions are simply special laws. She asserts that the legislature can classify by the type of borrower, type of loan, or amount of loan but cannot constitutionally classify according to the type of lender.
In response, The Second National Bank argues that these statutory exceptions are not special laws in the prohibited constitutional sense since they operate uniformly throughout the State of Florida. It contends that this state has for years permitted banks and other regulated lenders to charge interest on smaller loans at rates greater than ten percent per annum. Relying on the following definition of special law: "A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special," it contends that the laws in question are general laws. Reciting that this Court has long recognized the authority of the legislature to create different classifications of lenders, rates, and limits in regulating usury, it states that the legislature has reasonably classified regulated lenders and that Cesary has failed to carry her burden of proof to show otherwise. It maintains that different types of credit transactions involve different types of risks and different costs, that small loans involve greater risk and cost than commercial loans to an established business, that revolving charge accounts of credit card plans involve more risk than a loan of $20,000 to a bank's regular customer. It submits that the subject legislation is a valid and constitutional balancing of the need for reasonable, convenient credit, the need to protect the borrower, costs of credit arrangements, the risk of nonpayment, the nature of the lender's business, and the extent of existing government regulation.
We concur with the rationale of the trial court and agree with Second National Bank that the classifications created by the legislature through enactment of sections 687.031 and 656.17(1) are reasonable and that these laws are general laws which operate uniformly throughout the state upon these classifications.
Although there is no definition of general or special law in the constitution,[3] this Court in Bloxham v. Florida Central & Peninsular Railroad, 35 Fla. 625, 732-33, 17 So. 902, 924-25 (1895), explained what is meant by special law as used in the context of article III, section 11, as follows:
"A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition." It might be that the railroad of the complainant is the only property affected by the act. Such a state of affairs would not make it a special law. Speaking upon a similar contention, this court has also quoted with approval, in the case of Ex parte Wells, supra, from the supreme court of New Jersey, the following language: "A law so framed [i.e. general in its terms] is not a special or local law, but a general law, without regard to the consideration that within the state there happens to be but one individual of the class, or one place where it produces effects." It has also been said, as applied to statutes, that the word "general," as distinguished from "special," means all of a class, instead of part of a class. 23 Am. & Eng.Enc.Law, p. 148, and authorities cited. In the case of McAunich v. Railroad Co., 20 Iowa 338, it is said, speaking of statutes of this character: "These laws are general and uniform, not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not *921 affected by the number of persons within the scope of their operation."
The uniformity of operation throughout the state required by this constitutional provision does not mean universality of operation over the state. Reasonable classification as to subject matter is permitted. Cates v. Heffernan, 154 Fla. 422, 18 So.2d 11 (1944). Justice Terrell in Cantwell v. St. Petersburg Port Authority, 155 Fla. 651, 653, 21 So.2d 139, 140 (1945), explained:
A law does not have to be universal in application to be a general law. Laws relating to the location of the capital of the state, the state university, the state prison farm, the hospital for the insane and other state institutions are local in character but general in application and are regarded as general laws. The act under consideration is easily within this class.
"Classification" is the grouping of things because they agree with one another in certain particulars and differ from other things in those same particulars. Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334 (1931). This Court has ofttimes recognized the wide discretion of the legislature in formulating classifications when establishing regulations for the public welfare but has also acknowledged that statutory classifications must be reasonable and must be based upon some difference bearing a reasonable and just relationship to the subject matter regulated. Carter v. Norman, 38 So.2d 30 (Fla. 1948); State ex rel. White v. Foley, 132 Fla. 595, 182 So. 195 (1938). A statute which relates to subjects, persons, or things as a class, based upon proper differences which are inherent in or peculiar to the class is, a general law. State ex rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730 (1938).
The determination of the maximum amount of interest which may be charged for the use of money loaned is within the police power of the state, and the details of the legislation and exceptions to be made rest within discretion of the state legislature. Griffith v. Connecticut, 218 U.S. 563, 31 S.Ct. 132, 54 L.Ed. 1151 (1910). When dealing with usury questions and classifications established by the legislature relating thereto, the legislature has a great deal of discretion, and its classifications will not be disturbed unless clearly unconstitutional. Edwards v. State, 62 Fla. 40, 56 So. 401 (1911). The legislature enacted the usury laws to remedy an existing evil, and it has the authority to classify regulatory enactments with reference to degrees of evil. Beasley v. Cahoon, 109 Fla. 106, 147 So. 288 (1933).
A party who challenges the classification of a statute has the burden of proving that the classification therein does not rest upon any reasonable basis and is therefore arbitrary. Anderson v. Board of Public Instruction, supra. Cesary failed to show that the grounds justifying the particular classifications created by the legislature for exceptions to the general law governing interest and usury are unreasonable.
The classifications of lenders created by sections 687.031 and 656.17(1) have a basis in real differences of conditions affecting the subject matter regulated. In establishing these classifications, the legislature considered the need for convenient, reasonable credit for as broad a group of borrowers as possible; the need to protect necessitous borrowers from overreaching "loanshark" type lenders; the costs of different credit arrangements, including substantial bookkeeping and computer costs involved in smaller loans; the risk of nonpayment; the nature of the lender's business and the degree of existing government regulation of that business; and the nature and needs of the borrower. For each classification of lender, the legislature has established a particularized regulatory procedure relating not only to the allowable interest rates but also to the type of security which may be taken, the length of terms over which repayment can be made, the charges and costs which may be assessed, and the penalties to be imposed if any of the regulatory provisions are violated.
Accordingly, we answer the certified questions in the negative. Neither section *922 656.17(1) nor section 687.031 violates article III, section 11(a)(9), Florida Constitution.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] Section 656.17(1) provides:

LOANS; SECURITY REQUIRED, INTEREST AND CHARGES.  The right to lend money upon the security of comakers, personal chattels, or other property and to take, receive, reserve, and charge for such loans or discounts made or upon any notes, bills of exchange, or other evidences of debt, a discount not to exceed 8 percent per annum upon the total amount of the loan from the date thereof until the maturity of the final installment, notwithstanding that the principal amount of such loan is required to be repaid in installments, plus an additional charge not to exceed 2 percent of the principal amount of any loan, which additional charge shall be for investigating the character of the individual applying for the loan, the security submitted and all other costs in connection with the making of such loans, all which charges and discounts may be collected at the time the loan is made. No other charge of any kind or nature whatsoever, by whatsoever purpose or name designated, shall be made; provided, however, that when a loan is of such character as to necessitate the filing or recording of a legal instrument, an additional charge may be made for such filing or recording, providing such charge is actually paid to the proper public officials; also borrower may be required to pay abstract costs, reasonable attorney's fees, documentary stamp taxes, other taxes, premiums on insurance, and other similar charges, if the bank deems the same necessary for the protection and security of said loan.
[2] Section 687.031 provides:

Construction, ss. 687.02 and 687.03.  Sections 687.02 and 687.03 shall not be construed to repeal, modify or limit any or either of the special provisions of existing statutory law creating exceptions to the general law governing interest and usury and specifying the interest rates and charges which may be made pursuant to such exceptions, including but not limited to those exceptions which relate to banks, Morris Plan banks, discount consumer financing, small loan companies and domestic building and loan associations.
[3] Article X, section 12(g), Florida Constitution, merely provides: "`Special law' means a special or local law."