466 So.2d 1055 (1985)
In re ESTATE OF Holly E. GAINER, Deceased.
Carol Gainer, Individually and As Personal Representative of the Estate of Holly E. Gainer, Appellant,
v.
Dorothy Doran and Mary Adams, Appellees.
No. 64,874.
Supreme Court of Florida.
February 14, 1985.
Rehearing Denied May 1, 1985.
*1056 John M. Starling of Crofton, Holland, Starling, Harris & Severs, Titusville, for appellant.
Ronald W. Sikes, Titusville, for appellees.
ALDERMAN, Justice.
Carol Gainer appeals the decision of the District Court of Appeal, Fifth District, in Doran v. Gainer, 443 So.2d 473 (Fla. 5th DCA 1984), that reversed the trial court and held that section 665.063(1)(a), Florida Statutes (1981), is unconstitutional under the equal protection clauses of the United States and Florida Constitutions. We reverse the district court and hold that section 665.063(1)(a) is constitutional.
Carol Gainer, Dorothy Doran, and Mary Adams are daughters of decedent Holly Gainer. Prior to his death, Holly opened joint accounts with right of survivorship in two separate financial institutions in his name and the name of his daughter Carol. One of these financial institutions was a state banking corporation, the Merritt Square Bank; the other was a federal savings and loan association, First Federal Savings & Loan Association of Titusville. All of the monies in these accounts came from decedent. Decedent died testate on June 20, 1980, and letters of administration were issued to Carol Gainer who was the named personal representative of his estate. Carol failed to include the funds in these joint accounts in the inventory and the amended inventory of the estate.
Her sisters filed an objection to inventory and amended inventory and a petition for determination of ownership of assets. They contended that Carol was not entitled to the balances on deposit, which totaled $55,000 in the bank and $45,000 in the federal savings and loan, because their father established these joint accounts with rights of survivorship for his personal convenience so that, if he should become physically incapable of managing his financial affairs, Carol could assist him in handling them. Their father's Last Will and Testament, they asserted, specifically distributed his checking account, savings accounts, certificates of deposit, government bonds, and shares of stock to his three daughters. They urged that the disposition in the will was clear and conclusive evidence of the testator's intent and rebutted any presumption of an inter vivos gift to Carol, and they asked that the trial court adjudge that the monies in these joint accounts belong to the estate of Holly Gainer.
Carol Gainer responded that these jointly held accounts with rights of survivorship were not required by law to be a part of the inventory or an amended inventory. She relied upon section 665.271, Florida Statutes (1979), and section 659.291, Florida Statutes (1979), to support her claim of entitlement to these funds.
The trial court entered an order holding that the proceeds of the accounts at the Merritt Square Bank are estate assets. It based this decision on its findings that Holly Gainer's intent in establishing these accounts was merely to facilitate the division of these assets among his children after his death through Carol. It held that the presumption created by section 659.291 (now section 658.56) relating to the accounts at the state bank had been overcome. It further determined that, pursuant to section 665.271 (now section 665.063(1)), its finding of intent was not material to the question of entitlement to the funds in the First Federal accounts. It concluded that because there was no showing of fraud or undue influence, title to the proceeds of the accounts at First Federal vested in the *1057 survivor, Carol, upon the death of Holly Gainer.
Dorothy Doran and Mary Adams filed for rehearing and contended that section 665.271 (now section 665.063(1)) and section 659.291 (now section 658.56), as applied by the trial court, violate their rights to equal protection and due process of the laws.
The trial court denied rehearing and specifically ruled that section 659.291 (now section 658.56) and section 665.271 (now section 665.063(1)) are constitutional both facially and as applied. It held that all depositors in a federal savings and loan association are treated equally under section 665.271 and that, likewise, all depositors in a state bank are treated equally under section 659.291. The distinctions between these two sections as applied in this case, it concluded, did not violate Dorothy Doran's and Mary Adams' rights to due process and equal protection of the laws.
Upon appeal, the Fifth District disagreed with the trial court's analysis and determined that, rather than depositors, the affected classes were the testamentary beneficiaries who were receiving disparate treatment dependent upon the location of the assets of the testator. The district court found that the fact of location was irrelevant to the issue of the testator's intent and the proper disposition of these funds upon his death. It determined that the distinction between these two statutory provisions was irrational and held that section 665.063(1)(a) (previously section 665.271) is unconstitutional under the equal protection clauses of the United States and Florida Constitutions.
Section 665.271 (now section 665.063(1)) is a part of the "Florida Savings Association Act" and applies to savings accounts in associations or federal associations as defined by this act. It provides in pertinent part that when a savings account is held in the name of two or more persons in such form that the monies in the account are payable to either or the survivor or survivors, then, in the absence of fraud or undue influence, the account is the property of the parties as joint tenants. This provision expressly states:
The opening of the account in such form shall in the absence of fraud or undue influence, be conclusive evidence in any action or proceeding to which either the association or the survivor or survivors is a party of the intention of all of the parties to the account to vest title to such account and the additions thereto in such survivor or survivors.
This section, originally enacted in 1965 as chapter 65-463, applied to stock, savings share, or investment share accounts in building and loan associations or federal savings and loan associations. A 1969 amendment brought all such savings accounts in any association or federal association as defined by the Florida Savings Association Act within the statute's provisions but did not include savings accounts in banking institutions which are covered by the Florida Banking Code. Ch. 69-39, Laws of Fla.
Prior to 1965, several different approaches had been taken by the courts in this state to address the question of entitlement to assets in joint accounts with rights of survivorship. This created much uncertainty in the law surrounding survivorship rights. These approaches included the tenancy theory, the gift theory, and the contract theory. Chase Federal Savings & Loan Association v. Sullivan, 127 So.2d 112 (Fla. 1960); Spark v. Canny, 88 So.2d 307 (Fla. 1956); Crawford v. McGraw, 61 So.2d 484 (Fla. 1952); Hagerty v. Hagerty, 52 So.2d 432 (Fla. 1951); Webster v. St. Petersburg Federal Savings & Loan Association, 155 Fla. 412, 20 So.2d 400 (1945); Cerny v. Cerny, 152 Fla. 333, 11 So.2d 777 (1943).
In the context of this uncertainty in the law as it related to joint accounts with rights of survivorship, the legislature adopted the conclusive presumption that, in the absence of fraud, the joint accounts would vest in the survivor. By enacting this conclusive presumption, applicable to associations or federal associations as defined by chapter 665, the legislature put to *1058 rest the uncertain results attendant litigation predicated on the theory of gifts or other theories which had been utilized by courts. It was intended to provide certainty to the nature of the joint accounts with right of survivorship which it encompassed. It was unquestionably within the authority of the legislature to enact this statute. See In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980), appeal dismissed, 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981); Ward v. Marine National Bank, 38 N.J. 132, 183 A.2d 60 (1962).
In addressing this issue as it relates to these accounts in savings associations, the legislature was not compelled to adopt this identical conclusive presumption as a part of the Florida Banking Code. See United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979), wherein we reiterated our recognition that the legislature may move in increments to regulate business within this state.[*]
The Florida Legislature originally adopted section 659.291 (now section 658.56) as a part of the Florida Banking Code in 1971. It provides:
659.291 Deposits and accounts in two or more names; presumption as to vesting on death. 
(1) Unless otherwise expressly provided in the signature contract card or other similar instrument delivered to and accepted by a bank in connection with the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons, whether minor adult, payable to or on the order of one or more of them or the surviving account holder or holders, all such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest and claim in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank, shall vest in the surviving account holder or holders.
(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest and claims in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank against any one or more of such persons, shall, upon the death of any such person, vest in the surviving account holder or holders, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person, and notwithstanding *1059 the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.
Dorothy Doran and Mary Adams contend that the application of these two different presumptions to the separate accounts involved in this case violate their right to equal protection of the laws. They do not dispute the legislature's authority to enact the conclusive presumption or that this presumption would be valid in cases involving only the question of entitlement to assets held in joint accounts in federal savings and loan associations. They argue, however, that to apply different presumptions to the bank accounts and to the federal savings and loan accounts in the present case treats the testamentary beneficiaries differently and therefore violates their equal protection rights. The predicate of their argument is fallacious, however, because the classifications established by these statutes were correctly determined by the trial court to be the depositors in a federal savings and loan association and the depositors in a state bank rather than the testamentary beneficiaries.
A classification within the context of the equal protection clause is the grouping of things because they agree with one another in certain particulars and differ from other things in those particulars. Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334 (1931). We have repeatedly recognized that the legislature has wide discretion in formulating classifications when establishing regulations but these classifications must be reasonable. Cesary v. Second National Bank, 369 So.2d 917 (Fla. 1979). The party who challenges the classification has the burden of proving that it does not rest upon a reasonable basis. We hold that Doran and Adams have failed to carry their burden of demonstrating the constitutional invalidity of the challenged statute.
The legislature's treatment of accounts governed by the "Florida Savings Association Act" differently from accounts governed by the "Florida Banking Code" is not unreasonable.
Accordingly, we hold that section 665.063(1)(a) is constitutional and reverse the decision of the district court insofar as it holds this section invalid. The conclusive presumption would thus apply to all the monies deposited in the joint account in the federal savings and loan association, and Carol Gainer is entitled to the assets in this account. This cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., dissents with an opinion.
EHRLICH, Justice, dissenting.
The majority relies, in part, on the rationale of Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334 (1931) and Cesary v. Second National Bank, 369 So.2d 917 (Fla. 1979). Those cases stand for the correct proposition that the legislature has wide discretion when it makes classifications. Classification, in fact, is the fundamental principle of legislation. However, the Anderson case offers the cautionary note that the legislature's power to classify is not without limit:
But when a classification is made, the question always is whether there is any reasonable ground for it, or whether it is only and simply arbitrary based upon no real distinction and entirely unnatural. Classifications must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.
102 Fla. at 703, 136 So. at 337-38 (citations omitted). The fundamental question, therefore, is whether there is a reasonable basis for the discrimination between deposits of the kind at issue here.
*1060 The majority's historical scenario of the origin of the statutes tells us of the adoption by the legislature in 1965 of chapter 65-463, now section 665.063(1)(a), which created the unrebuttable presumption in the matter of accounts in savings associations, and the enactment six years later, in 1971, of chapter 71-205, now section 659.291, which created a rebuttable presumption where the accounts are in a bank. The majority calls this incremental regulation of business and permissible on the authority of United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979). I can accept the rationalization that when the legislature acted in 1965 regarding savings associations, there may truly have been an interim period of incremental business regulation. However, when the legislature acted in the banking area six years later, the legislature was no longer engaged in incremental business regulation but instead, created unconstitutional disparate treatment of testamentary beneficiaries of a depositor.
The majority justifies this admittedly disparate treatment by urging that the classification established by these statutes are the depositors in the institutions, not the testamentary beneficiaries. This, in my opinion, is an inartful dodge of the real issues. True, the statutes deal with deposits and depositors, and the latter are not treated disparately up to the time of their death. The purpose of the statutes is to take care of the aftermath of the death of one of the depositors and what happens to the assets on deposit at that time, and this is where the statute in question runs afoul of the equal protection and due process clauses of the constitution. At the moment of death, the survivors are treated disparately. As to those whose account is in the savings and loan association, the presumption of the testator is conclusive, but as to that very same depositor who has an account in a bank, the presumption may be rebutted. This is a patent violation of the rights of the survivors to equal protection and due process the law, and call it what the majority may, is unreasonable, arbitrary and capricious.
I have looked long and hard to find in the majority's opinion any real rational basis for this discrimination between testamentary beneficiaries where their accounts are in savings and loan institution and where they are in a bank, and I can find none. I can find none because there is none.
Appellees suggest the true reason disparate treatment exists in this case: legislative oversight. The legislature has undertaken to create a presumption as to joint survivorship accounts in three different types of financial institutions. Sections 657.036, 658.56 and 665.063, Florida Statutes (1983) govern, respectively, credit unions, banks, and savings and loans. The unrebuttable presumption was adopted for savings associations in 1965; the legislature adopted the rebuttable presumption for bank accounts in 1971; the rebuttable presumption was applied to credit unions in 1980, chapter 80-258. Based on the two most recent legislative pronouncements on this issue, therefore, it is clear to me that the legislature intended to allow proof of contrary intent to overcome the presumption as to joint survivorship accounts. That the legislature failed to correct its omission in chapter 658 can only be explained as oversight. Oversight is not the same as the incremental reform of business. Surely the courts should intervene when oversight intrudes on the constitutional rights of citizens.
Unrebuttable presumptions must be subjected to the closest scrutiny because they threaten basic constitutional rights of those presumed against. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). While a uniformly applied presumption might survive such scrutiny, the present situation obviously fails. I suggest no new rule of law here. In the position I take here, I see no threat to the legislature's power to classify, and trust that others harmed by arbitrary and capricious classification will not be deterred by the majority's decision from exercising their constitutional right to relief. I hope that the legislature will act to correct its oversight.
*1061 In my opinion the district court of appeal was correct and I would affirm its decision.
NOTES
[*] In United Yacht Brokers, Inc. v. Gillespie, we upheld the validity of section 537.05(2) against an equal protection challenge. This provision required licensed yacht brokers to procure written authorization from a principal before acting on behalf of the principal. We quoted with approval the following excerpt from Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955):

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think.... Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind... . The legislature may select one phase of one field and apply a remedy there, neglecting the others.
377 So.2d at 671. We also quoted with approval our earlier decision of Noble v. State, 68 Fla. 1, 4, 66 So. 153, 154 (1914), wherein we stated:
The Legislature may regulate some occupations, and not regulate others, when private rights secured by the Constitution are not thereby invaded and the regulations that are provided operate with substantial fairness upon practically all persons similarly situated, so that the governmental authority be not arbitrarily exercised to injure the substantial rights of or to oppress any person.
We concluded that:
Finally, to accept United's position would virtually require that all brokers of all commodities must be regulated identically. This is not required, and, accordingly, we find that section 537.05(2) is a reasonable legislative classification serving a valid purpose under the state's police power.
377 So.2d at 671.