873 So.2d 451 (2004)
OREGRUND LIMITED PARTNERSHIP, et al., Appellants,
v.
Kathy D. SHEIVE, etc., et al., Appellees.
No. 5D03-2408.
District Court of Appeal of Florida, Fifth District.
May 7, 2004.
Rehearing Denied May 28, 2004.
*453 Robert W. Anthony of Fassett, Anthony & Taylor, P.A., Orlando, for Appellants.
John H. Dannecker and Richard A. Burt of Shutts & Bowen, LLP, Orlando, for Appellees.
SHARP, W., J.
Oregrund Limited Partnership (Oregrund) and Euramerican Investment Consultants Corp.[1] (collectively referred to herein as appellants), appeal from three orders of the trial court which collectively dismissed all of the counts set forth in their third amended complaint, with prejudice. On July 13, 2001, appellants filed suit against appellees, investors in the two transactions set forth in the complaint,[2] on multiple grounds, all of which, save one, are based on violation of the state's usury statutes. In dismissing the complaint, the trial court determined that, regarding the two transactions set forth in the complaint, any return to appellees was speculative. Inferentially, this is a finding that appellees were primarily investors, not lenders, removing the transactions from application of the usury statutes. We find that appellants' complaint sufficiently stated a cause of action, based on violation of the usury statutes, and reverse.
The facts set forth in the complaint are taken as true at this procedural juncture and are as follows: Appellants wanted to borrow approximately $600,000.00 to be used in a business venture, known as "Port-O-Call." Appellants also owned an 8.4 acre vacant commercial tract of land in Osceola County, located between U.S. 192 and Lake Cecile, which they wanted to develop in the future. There were plans to locate the Osceola County Convention Center immediately across from the 8.4-acre tract. It had been appraised in 1998 for $5.76 million, and was encumbered by a $1.7 million mortgage. In September of 2000, after the transactions in this case, the tract was appraised at $5.215 million, encumbered by a $1.85 million mortgage.
On January 6, 2000, the first group of investors executed an agreement which created a land trust known as the Lake Cecile Land Trust, in which they invested various sums of money in return for proportional interests. The next day, three documents were executed by the parties' representatives: Kathy Sheive, as attorney and trustee for the land trust, and John Nadd, the general partner of Oregrund *454 and president of Euramerican. The first document was an Agreement for Sale and Purchase of the 8.4-acre tract, by which appellants sold the land trust a one-half interest in the tract for $600,000.00. Second, appellants executed a warranty deed transferring the one-half interest in the tract to the land trust. And third, the parties executed an Option to Repurchase, which gave appellants the right to repurchase the one-half interest in the tract that they had, that day, conveyed to the land trust. Appellants were the sole option beneficiaries under the Option. Appellants received $600,000.00.
The terms of the Option were that if appellants exercised their right to repurchase the tract in the first year following the sale, the repurchase price was to be $1.2 million (twice the amount of $600,000.00 proceeds received by appellants). If the Option was exercised in the second year following the sale, the price was to be $1.8 million (three times the amount of the $600,000.00 proceeds received by appellants). If the Property was not repurchased in two years, the land trust had the right to sell its one-half interest in the tract.
If the land trust sold its one-half interest after two years, the minimum sales price had to be $1.7 million (the amount of the mortgage at that time). The land trust was entitled to keep all of any sale proceeds up to $3.5 million. Any proceeds which exceeded $3.5 million were to be split equally between appellants and appellees. Appellants had the sole responsibility to pay the mortgage, taxes and other expenses on the tract while the land trust owned a one-half interest in the tract.
Before the first year passed, apparently appellants incurred financial problems. Eight months after the initial transaction, on August 31, 2000, in consideration for a full interest in the tract and "the securing of refinancing," appellees amended the land trust with respect to the Option. Pursuant to the Amendment, the land trust received Appellants' remaining one-half interest in the tract. Appellants were given the right to repurchase the entire tract at any time in the future. The only event which triggered the termination of the option to repurchase was appellants' sale of its Port-O-Call venture, but such sale was at appellants' discretion. Under the Amendment, if appellants elected to repurchase the tract prior to January 1, 2001 (i.e., within four months of the Amendment), the purchase price was $1.2 million. After that date, appellants' repurchase price went up an additional $600,000, bringing the total to $1.8 million.
The mortgage payments, taxes, and other expenses on the tract continued to remain appellants' sole obligation, and their failure to pay these expenses constituted a default, which terminated their rights as option beneficiary. Further, commencing November 1, 2000, appellants were required to pay the trustee of the land trust the sum of $5,250 per month, which was to be held in escrow and used at the trustee's discretion in the event of a default.
On September 1, 2000, First Commercial Bank of Florida, loaned appellants an additional $150,000 to be added to the original principal mortgage balance of $1.7 million, thereby increasing the mortgage balance on the tract to $1.85 million. That same month, an appraisal was performed and the tract was valued at $5.215 million.
Appellants were unable to raise the necessary funds to exercise the option and continued to be unable to do so through June 25, 2001. They also defaulted by failing to pay the mortgage and taxes on the tract. Appellees sent a notice of default and terminated appellants rights as option beneficiaries. Appellants filed this lawsuit, claiming the transactions are usurious,[3] *455 for related relief therein, and to alternatively declare the deed a mortgage or cancel it.

Appellate Review
We begin our analysis by noting that the sufficiency of a complaint is a matter of law which requires a de novo review. Sobi v. Fairfield Resorts, Inc., 846 So.2d 1204 (Fla. 5th DCA 2003). An appellate court is not free to rely on assumptions as to what may or may not be proved. Sweeney v. Integon General Ins. Corp., 806 So.2d 605 (Fla. 4th DCA 2002). All well pleaded allegations must be accepted as true. Fox v. Professional Wrecker Operators of Florida, Inc., 801 So.2d 175, 178 (Fla. 5th DCA 2001).

Review of Usury Law in Florida
The burden of proving usury is on the party who alleges it. See Phillips v. Lindsay, 102 Fla. 935, 136 So. 666 (1931); Tucker v. Fouts, 73 Fla. 1215, 76 So. 130 (1917); Swanson v. Gulf West Intern. Corp., 429 So.2d 817 (Fla. 2d DCA 1983). Although the determination of usury is one for the fact finder, Wells v. Freedman, 342 So.2d 983 (Fla. 3d DCA 1977); where there is no conflict in the material facts, it is one of law for the court. Rebman v. Flagship First National Bank of Highlands County, 472 So.2d 1360 (Fla. 2d DCA 1985).
The Legislature enacted usury laws to remedy an existing evil, and it[4] has wide discretion in dealing with usury. Cesary v. Second National Bank of North Miami, 369 So.2d 917 (Fla.1979). Legislative classifications are not to be disturbed by the courts unless plainly unconstitutional. Cesary. The usury statutes are to be read together, and are particularly subject to construction in pari materia. Wilensky v. Fields, 267 So.2d 1 (Fla.1972); First Mortgage Corp. of Vero Beach v. Stellmon, 170 So.2d 302 (Fla. 2d DCA 1964). Each statute is to be construed so that it is meaningful in all parts. Wilensky; First Mortgage.
Florida's usury laws are set out in Chapter 687. Section 687.02(1) defines usurious contracts as

[a]ll contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest are hereby declared usurious. However, if such loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000 in amount or value, then no contract to pay interest thereon is usurious unless the rate of interest exceeds the rate prescribed in s. 687.071. (Emphasis added)
Similarly, section 687.03(1), which defines unlawful rates of interests, provides:
Except as provided herein, it shall be usury and unlawful ... whereby the *456 debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of the equivalent of 18 percent per annum simple interest. However, if any loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000 in amount or value, it shall not be usury or unlawful to reserve, charge, or take interest thereon unless the rate of interest exceeds the rate prescribed in s. 687.071.... (Emphasis added)
The Legislature deems the charging of higher rates of interest as criminal, and has imposed severe penalties on persons engaged in criminal usurious practices. Section 687.071, entitled "Criminal usury, loan sharking; shylocking," provides:
(2) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 25 percent per annum but not in excess of 45 percent per annum, or the equivalent rate for a longer or shorter period of time, whether directly or indirectly, or conspires so to do, shall be guilty of a misdemeanor of the second degree....
(3) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, shall be guilty of a felony of the third degree ... (Emphasis added)
* * *
(7) No extension of credit made in violation of any of the provisions of this section shall be an enforceable debt in the courts of this state. (Emphasis added)
A review of the above statutes reveals that for loans under $500,000, a usurious contract is present if an interest rate exceeds 18%. Sections 687.02(1), 687.03(1). But for loans exceeding $500,000 the operative statute is section 687.071. That statute provides that loans which have effective interest rates of 25% or more, but less than 45%, and loans exceeding an effective interest rate of 45%, are criminal offenses. Sections 687.071(2) and (3).
Also excluded from the usury statutes are transactions in which a portion of the investment is at speculative risk. Hurley v. Slingerland, 461 So.2d 282, 283 (Fla. 4th DCA 1985); Diversified Enterprises, Inc. v. West, 141 So.2d 27 (Fla. 2d DCA 1962). This principle has been statutorily validated when the venture exceeds $500,000. See Bailey v. Harrington, 462 So.2d 861 (Fla. 3d DCA 1985).
There are four essential elements of a usurious transaction: (1) an express or implied loan; (2) a repayment requirement; (3) an agreement to pay interest in excess of the legal rate; and (4) a corrupt intent[5] to take more than the legal rate for the money loaned. Party Yards, Inc. v. Templeton, 751 So.2d 121, 123 (Fla. 5th DCA 2000); Kraft v. Mason, 668 So.2d 679 (Fla. 4th DCA 1996); Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. *457 3d DCA 1978). One does not have to specifically charge interest for there to be usury. See American Acceptance Corp. v. Schoenthaler, 391 F.2d 64 (5th Cir.1968) (Florida law).
Courts look to the substance of the transaction to determine whether a transaction is usurious. Party Yards; Kay v. Amendola, 129 So.2d 170 (Fla. 2d DCA 1961). That is, a finding of usury depends on the intent and understanding of the parties. Indian Lake Estates, Inc. v. Special Investments, Inc., 154 So.2d 883 (Fla. 2d DCA 1963). A key issue is the liability of the borrower under the contract's terms, or what may be demanded of a borrower, rather than what is demanded of him. First Mortgage.
A transaction that is either entirely or partially in the form of a sale, may be usurious when the intent is to make a loan of money for a greater profit than allowed by statute. See, e.g., Griffin v. Kelly, 92 So.2d 515 (Fla.1957); American Acceptance. (Florida law). See also Hembree v. Bradley, 528 So.2d 116 (Fla. 1st DCA 1988) (contract may have been a loan disguised as contract for purchase and sale of property). The value of the property as compared with the sum paid is an important factor in determining whether the transaction is a sale or a loan. See, e.g., Kawauchi v. Tabata, 49 Haw. 160, 413 P.2d 221 (1966).
A sale-option transaction may be considered a loan when the loan is unconditional and compels the vendor to repurchase the property for an amount that, if the loan was disguised as a sale, the "return" or profit would be usurious. Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. 3d DCA 1978) (option to repurchase not mandatory, but relative disparity between sale price and true value dictated option be exercised).

Trial Court's Ruling
The trial judge found that the transactions in this case involved a sum in excess of $500,000 and that both the original Option to repurchase and the Amendment were structured so that any return to appellees was speculative. The judge cited to section 687.03(4),[6] which exempts interests in profits, taken as an advance or forbearance for a loan, so long as the value of the property interest is dependent on the success of the venture in which the loan proceeds are used. See Jersey Palm-Gross, Inc. v. Paper, 639 So.2d 664, 673 (Fla. 4th DCA 1994), Farmer, J. dissenting. Profit participation is authorized by the usury statute as not constituting additional interest. Bailey v. Harrington, 462 So.2d 861 (Fla. 3d DCA 1985). See also Schwab v. Quitoni, 362 So.2d 297 (Fla. 3d DCA 1978).
In this case, however, the alleged transactions contain no provision for any interest in profits as contemplated by the statute. The record reveals that the $600,000.00 proceeds were to be used for the benefit of another entity, Port-O-Call, and not the tract. Nor do we find that the pleadings support the legal conclusion that any return to appellees would be speculative. *458 The tract was valued at in excess of $5 million on two different occasions, and based on the maximum mortgage loan against the tract ($1,850,000.00), the equity exceeded $3,000,000.00. Appellee's "investment" in the tract was $600,000. For $600,000.00, they received a 50% interest in the tract in the initial transaction, at a time when the value of their one-half interest exceeded $2.5 million. After the Amendment to the Option, they received a 100% interest in the tract valued in excess of $5 million, for $600,000.00. On its face, it cannot be concluded, as a matter of law, that appellees' $600,000.00 investment was at speculative risk because of the value of the property interest they held.

Analysis of Usury Elements Sub Judice

Whether There was an Express or Implied Loan. The facts of this case illustrate that, based on the intent of the parties' and the circumstances of the transactions, it could be established that a loan was made to appellants, who were also given an option to repurchase the tract in lieu of a mortgage. See Party Yards; Kraft; Bermil.
Whether There Was a Repayment Obligation. Although there was no specific written obligation for appellants to repurchase the property, we reject appellees' argument that this precludes a finding that no repayment or repurchase requirement existed in this case. Instead, we agree with the third district in its holding in Bermil, where it found that the economic facts surrounding the transaction were such that repayment was required. The form of the transaction can be disregarded even though the repurchase option is technically conditional. Bermil. As in Bermil, a fact-finder could determine that the transactions in this case were economically binding on appellants to repurchase due to the gross disparity between the $600,000.00 proceeds given to appellants and the value of the property interest appellants conveyed to appellees. Initially, appellants conveyed a property interest to appellees that exceeded $1.7 million in value.[7] Appellants were initially allowed to repurchase the one-half interest for $1.2 million in the first year or $1.8 million in the second. After the Amendment, appellants' property interest exceeded $3 million in exchange for a "$600,000 investment." The value of the property interest appellees received initially was almost three times their "investment" and after the Amendment, five times[8] the amount of their loan. These values could support the conclusion that appellants were obligated to repurchase the property or suffer a tremendous economic loss.
Whether There was an Agreement For a Return Greater Than Legal Rate. Appellees argue that the Amended Option is open indefinitely, and thus a "due" date cannot be determined, which is necessary in order to calculate an interest rate. Any interest rate calculated would vary and could be reduced to non-usurious rates, depending on the number of years the "loan" was outstanding and the price for which the tract sold. They conclude usury cannot be established unless a specific rate of interest has been charged. They are incorrect. As to the latter argument, one does not have to specifically charge interest for there to be usury. American Acceptance.
Moreover, the usurious nature of a transaction is established at the inception *459 of the transaction. See Home Credit Co. v. Brown, 148 So.2d 257 (Fla.1963); Shorr v. Skafte, 90 So.2d 604 (Fla.1956); Carter v. Leon Loan & Finance Co., 108 Fla. 567, 146 So. 664 (1933); Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 425, 34 So. 255 (1903); First Mortgage; Kay v. Amendola, 129 So.2d 170 (Fla. 2d DCA 1961); Coral Gables First National Bank v. Constructors of Florida, Inc., 119 So.2d 741 (Fla. 3d DCA 1960). The exception to this rule is where an old contract is abandoned and a new one, which has been entered into free from the vice of the old, occurs. Carter.
Pursuant to the initial option, appellees would have received double the amount of their investment, $1.2 million, within one year, and triple the amount, $1.8 million, within two years. This equates to an interest rate which is calculable and which exceeds the permissible amount in section 687.071.[9]
Nor did the execution of the Amendment alter the usurious nature of this transaction. It is well settled that when a usurious contract is renewed by a new or substituted contract, usury follows and becomes a part of the second contract.[10]Shorr; Carter; Coral Gables. Moreover, delay in enforcement of a usurious contract does not purge it of its vices. Shorr; Carter; Coral Gables.
In this case, it cannot be concluded as a matter of law that a new contract was freely entered into by the parties. An Amendment to the land trust was executed by appellees, in which they deleted the requirement that the option be exercised in two years in exchange for appellants transferring the remaining one-half interest in the tract to them. If the original transaction was usurious, the taint was not removed with the Amendment.
Whether Appellees Acted With Corrupt Intent. Corrupt intent is established if the evidence indicates the lender knowingly charged or received excessive interest considering all the circumstances surrounding the transaction. Party Yards. The Agreement for Sale, the Option and the Amendment, are sufficient to support the claim that appellees knowingly intended to receive an interest rate which exceeded the permissible statutory rate.
In sum, we find that the allegations in the complaint are sufficient to plead a cause of action in usury, and for the related relief of quiet title[11] and civil theft.[12] We find nothing in the record to justify the dismissal of Count VII, which alternately pleaded for a declaration of the deed to be a mortgage, section 697.01, Blanco v. Novoa, 854 So.2d 672 (Fla. 3d DCA 2003), Smith v. Potter, 406 So.2d 1231 (Fla. 5th DCA 1981); or for cancellation of the deed, Leonard v. Howarth, 153 So.2d 743 (Fla. 2d DCA 1963). Accordingly, we reverse the trial court's orders and remand for further action consistent with this opinion.
REVERSED and REMANDED.
SAWAYA, C.J., and TORPY, J., concur.
NOTES
[1] Euramerican is the sole General Partner of Oregrund.
[2] Originally, the investors were: Randy Sheive, Ray Parsons, Dale Parsons, Charles H. Parsons and Ann Moncrief. In April of 2000, appellees Rajin N. Ackley, C. Allen Whitson, Craig Lewis, Larry Y. Harrelson, Larall Enterprises (a Florida General Partnership) and Whit-Law Enterprises (a Florida General Partnership) were added.
[3] The third amended complaint contained seven counts: Count 1: Usury, first transaction, under section 687.03; Count 2: Declaratory Judgment, Usury, first transaction, under section 687.071; Count 3, Declaratory Judgment, Usury, second transaction, under section 687.071; Count 4: Usury, second transaction, under section 687.03; Count 5: Quiet Title; Count 6: Civil Theft, section 772.11; and Count 7: Declaratory Judgment to declare deeds are mortgages or to cancel deeds.
[4] The determination of the maximum amount of interest which may be charged for the use of money loaned is within the police power of the state. Cesary v. Second National Bank of North Miami, 369 So.2d 917 (Fla.1979). The details of the legislation, penalties, and exceptions made are within the discretion of the legislature. Cesary; Coe v. Muller, 74 Fla. 399, 77 So. 88 (1917).
[5] The Florida statutes require only an intent to charge more than the law allows for the contract to be usurious. American Acceptance Corp. v. Schoenthaler, 391 F.2d 64 (5th Cir.1968) (Florida law). However, the fact that one receives more than the law permits is not fully determinative of whether usury is present. Wells v. Freedman, 342 So.2d 983 (Fla. 3d DCA 1977).
[6] Section 687.03(4) provides:

If, as provided in subsection (3), a loan, ... exceeds $500,000, then for the purposes of this chapter, interest on that loan, ... shall not include the value of the property charged, reserved, or taken as an advance or forbearance, the value of which substantially depends on the success of the venture in which are used the proceeds of that loan .... Stock options and interests in profits, receipts, or residual values are examples of the type of property the value of which would be excluded from calculation of interest under the preceding sentence. (Emphasis added).
[7] $5,215,000 lowest appraised value, less $1.7 mortgage = $3.5 million: one-half = $1.7 million.
[8] $5,215,000 appraised value, less $1,850,000 mortgage = $3,375,000 equity value in whole.
[9] § 687.071(3), Fla. Stat.
[10] The exception to this rule is where an old contract is abandoned and a new one, which has been entered into free from the vice of the old, occurs. Carter v. Leon Loan & Finance Co., 108 Fla. 567, 146 So. 664 (1933).
[11] Mohican Valley, Inc. v. MacDonald, 443 So.2d 479 (Fla. 5th DCA 1984) (quiet title may be founded on a written instrument).
[12] See, section 772.11; Florida Desk, Inc. v. Mitchell International, Inc., 817 So.2d 1059 (Fla. 5th DCA 2002).